Argued and submitted November 13, 1981, affirmed May 26, 1982

DEAN,
*Petitioner,*
*v.*
CHILDREN'S SERVICES DIVISION
JUVENILE CORRECTIONS PROGRAM,
*Respondent.*

(No. 17116, CA A20253)

645 P2d 581

Julie H. McFarlane, Portland, argued the cause and filed the briefs for petitioner. With her on the reply brief were Alan Baily, Susan Svetkey, Margaret Nightingale, Portland, and Michael H. Marcus, Portland.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Petitioner seeks review of an administrative proceeding before the Revoking Authority of MacLaren Training School, a division of Children's Services Division (CSD), and reversal of CSD's order revoking petitioner's parole. The sole error assigned is CSD's failure to appoint counsel at state expense to represent petitioner at the parole revocation hearing.

■ ■ CSD moved to dismiss the appeal as moot[1] and as barred by *res judicata*. We denied the motion with leave to raise the questions again in respondent's brief and at oral argument. Although the question is not moot, *see* n 1, *supra*, we conclude that petitioner is collaterally estopped[2] to raise the federal issue in this appeal because of the unique procedural posture in which the issue comes to us. He is not estopped to raise the state issue.

## PROCEDURAL HISTORY

In August, 1980, petitioner, a juvenile, was paroled from MacLaren School to foster care. One month later, he was returned to MacLaren after an alleged parole violation. He had a preliminary hearing on October 8, 1980, after which the hearings officer recommended parole revocation; petitioner requested a formal hearing. He then contacted the Juvenile Rights Project (JRP), part of Oregon Legal Services Corporation, to request that a JRP attorney represent him at his formal hearing, apparently because he believed he faced a criminal charge at the hearing. The chairman of the Revocation Hearings Committee refused to appoint counsel at state expense but offered to cooper-

---

[1] Although petitioner was 18 years old at the time of this appeal and had been reparoled, the issue here is not moot. Petitioner had not been terminated from his commitment, because he still owed some restitution. He is subject to possible parole revocation until that commitment is terminated, by petitioner's payment of the remaining restitution or turning 21. *See* ORS 419.511(1); 420.120(1); OAR 412-40-150.

[2] Although respondent argues that petitioner is barred by *res judicata* or claim preclusion, the federal proceeding in which the issue raised here was litigated was not for the same relief. Accordingly, collateral estoppel or issue preclusion, not *res judicata*, is the applicable principle. *See Bahler v. Fletcher*, 257 Or 1, 474 P2d 329 (1970). The difference in terminology, however, is not of consequence here, because the parties' arguments incorporate the concept of collateral estoppel.

ate with JRP if it chose to represent petitioner. The hearing was set for late November.

Shortly before the hearing, JRP filed, in a federal district court pending case, a motion for a temporary restraining order to enjoin the defendants[3] from holding petitioner's parole revocation hearing unless they appointed counsel for him. From what we glean from the pleadings included as appendices to the motion to dismiss, that federal case was *Gary H., et al v. Hegstrom, et al,* a class action about juveniles' rights, including right to appointed counsel in parole revocation proceedings. Petitioner's motion was the first time the federal court had been asked to adjudicate the rights of an individual member of the class. The motion asserted that denial of appointed counsel would violate petitioner's federal constitutional rights to due process and equal protection under *Gagnon v. Scarpelli,* 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973), which petitioner claims mandates appointment of counsel in juvenile parole revocation proceedings.[4] On November 24, 1980, the federal court denied a preliminary injunction but reserved the right to reconsider its ruling in light of *Gagnon* after the parole revocation hearing.

According to petitioner, the parties had agreed that the revocation hearing would take place without counsel; in the event of parole revocation, the transcript would be presented to the court, which could then review the transcript to determine whether, if *Gagnon* applied, "* * *

---

[3] It is not clear from the record who the defendants were besides Leo T. Hegstrom, the Director of the Human Resources CSD Division, but we assume they are the same as involved here. Petitioner does not contend otherwise.

[4] In *Gagnon v. Scarpelli,* 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973), the Supreme Court held that an *adult* offender was entitled to appointed *cousel* at a parole revocation hearing under the following circumstances:

" * * * Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. * * * " 411 US at 790-91.

[appointed] counsel was required under the circumstances and the applicable law * * *. If on the other hand, defendants [were] successful in persuading [the court] that the transcript somehow indicate[d] their claim that the appropriate criteria do not require appointment of counsel, then no harm has been done."

The revocation hearing was held on December 5, 1980, without counsel. On December 12, 1980, the federal court did reconsider its ruling, after reviewing a tape and transcript of the revocation hearing, after hearing counsel's arguments and after personally questioning petitioner. The court orally affirmed its original ruling and issued a written order on January 7, 1981, after reviewing briefs of counsel. In the oral ruling and written order, the federal court made findings of fact and conclusions of law on the merits of petitioner's right to appointed counsel.[5]

---

[5] At the hearing, Judge Burns stated:

" * * * I am satisfied that under the circumstances presented in this case that the standards of *Gagnon* and *Morrissey* [*v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972),] as best I can understand them were not violated. I am satisfied that the circumstances of the alleged violation and the surrounding context in which it was placed were not of the complex variety that I believe *Gagnon* and *Morrissey* contemplated.

"I am also satisfied and my decision in this regard is reinforced by the conversation that I was fortunate enough to have with Robert here this morning. I am satisfied that under those [standards] * * * it cannot be fairly said he was unable to speak for himself so as to trigger the requirement of appointed counsel. * * * "

The oral findings were followed on January 7, 1981, by an order which recited, in part:

" * * * On December 12, after careful review of the transcript, I reaffirmed my original ruling by way of an oral opinion, largely based upon the reasons that Mr. Dean spoke effectively for himself and the issues were neither complex nor difficult to develop.

" * * * * *

"I find that the proper standard for judicial review of the equal protection claim is whether the distinction between the CSD rule and the Oregon statute bears a rational relationship to some legitimate state interest. Strict scrutiny is not an appropriate standard of review. The classification of juveniles versus adults is not considered suspect. Nor is there a fundamental right to counsel in a parole revocation proceeding in which a parolee can effectively speak for himself and in which the issues are not complex. *Gagnon v. Scarpelli, supra.*

" * * * * *

Petitioner now appeals to this court his parole revocation dated either December 8 or 9, 1980, contending that denial of appointed counsel in the parole revocation proceeding violated his *state* and federal constitutional rights to due process and equal protection.

## COLLATERAL ESTOPPEL

Petitioner argues that his appeal is not barred by the previous federal court ruling, because (1) it was not a final judgment; (2) nothing in the record establishes identity between plaintiffs in *Gary H.* and petitioner; (3) CSD is equitably estopped to claim *res judicata* by having represented at the second federal court hearing that that hearing would not bar this appeal; and (4) petitioner here asserts violation of his state constitutional rights, not in issue before the federal court.

■ (1) *Finality of Judgment.* The January 7, 1981, federal court order was entitled "Order Denying Preliminary Injunction on Behalf of Robert Dean." Regardless of the title, the federal court order ruled on the merits that petitioner's parole revocation hearing denied him neither due process nor equal protection. The order was not a mere reconsideration of the motion for a preliminary injunction; it was, rather, a judicial review on the merits of the fairness of the revocation hearing and a determination that, if *Gagnon v. Scarpelli, supra,* applied to a juvenile parole revocation proceeding, appointed counsel was not required under the facts of the case.

Oregon courts require a final judgment or prejudicial dismissal to trigger doctrines of former adjudication. *McAllister v. Charter First Mortgage, Inc.,* 279 Or 279, 285, 567 P2d 539 (1977). Although the class action to which petitioner was party has not ended in dismissal or judgment, petitioner's federal claim made here has been adjudicated there. The federal court order of January 7 does not deal with preliminary relief; the November 24 order does and, respondent agrees, the November order was not an

"IT IS HEREBY ORDERED that the motion for a preliminary injunction is denied, as the denial of appointed counsel at Mr. Dean's parole revocation hearing was not a violation of either the Due Process Clause or the Equal Protection Clause of the 14th Amendment."

adjudication on the merits. Thus, it was not final for purposes of former adjudication. But respondent does not rely on that first order.

Further, what is final enough to preclude relitigating a particular issue may not be final enough for a full appeal; for example, denial of a preliminary injunction is appealable under 28 USC § 1292(a)(1). Judge Friendly noted in *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F2d 80, 89 (2d Cir 1961), *cert den* 368 US 986 (1962):

"Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (*i.e.*, that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."

Restatement (Second) Judgments, § 41 (Tent. Draft No. 1, 1973) adopts the Second Circuit view:

"The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect."

Comment g to § 41 discusses factors relevant to "firmness":

"[T]he court should determine that the decision to be carried over was adequately deliberated and firm even if not final in the sense of forming a basis for a judgment already entered. This preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were *fully heard*, that the court supported its decision with a *reasoned opinion*, that the decision was *subject to appeal* or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion." (Emphasis added.)

*See also Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F2d 990, 995-96 (7th Cir 1979), *cert den* 444 US 1102 (1980), and cases cited there.

Those factors are all present here, and the January 7 federal court order was not at all tentative. Certainly it

was final enough to preclude issue relitigation, *i.e.,* to *collaterally estop* petitioner to relitigate the *issue* of denial of federal constitutional rights.

■ (2) *Identity of Parties.* Petitioner also argues that respondents have failed to show identity of parties between plaintiffs in *Gary H.* and petitioner here. In *Gary H.,* he was a member of the class, appeared as a party and requested relief in his individual capacity. There was identity of parties.

■ (3) *Equitable Estoppel.* Petitioner's final contention is that respondent is equitably estopped to assert *res judicata* (or collateral estoppel), because respondent represented to the federal court and petitioner that the December 12 hearing would not bar petitioner's appeal of his parole revocation to this court. There was no stipulation, however, that the particular issue litigated and decided in federal court would not be precluded. We have reviewed the entire transcript of the December 12 hearing, submitted as an exhibit to petitioner's memorandum in opposition to the motion to dismiss. It shows only that respondent agreed that if the federal court did *not* rule on the juvenile's federal right to appointed counsel, there would be no estoppel on *that* question and that other questions could be raised.

■ Petitioner's counsel did not want to resolve the issue in this court but urged the federal court to rule on the merits:

> "[PETITIONER'S COUNSEL]: What bothers me most is the prospect what Your Honor will do * * * on this issue is avoid deciding the merits because there is a way out. The way out I understand to be what you are exploring with counsel now is would you stipulate they can now go the Court of Appeals. If that happens that is tragic way from our point of view. It's a bad way to go period. Here we left the meeting [of November 24, 1980] with both parties agreeing that the best thing for you is the record of what happened without counsel."

The court then decided the merits of the federal right to counsel issue, as petitioner had requested. Petitioner's appeal to this court for review of his parole revocation was not barred by the federal proceeding, but review of the particular *issue* of a federal right to appointed counsel is

estopped, because it was fully litigated and decided by the federal adjudication on the merits, pursuant to the procedure agreed upon between the parties and at. petitioner's insistence.

Petitioner chose a federal forum to litigate his federal right to appointed counsel at the parole revocation hearing. The court adjudicated his right and, in so doing, assumed without deciding that *Gagnon* applied. Petitioner is not entitled to a second ruling on the merits of his federal claim.

■    (4) *State Constitutional Rights.* On appeal, for the first time in state proceedings, petitioner challenges OAR 412-40-030(7),[6] 412-40-045(1)(g) and (3), the CSD rule

---

[6] Both parties cite this rule as OAR 412-40-150(9)(g). That was the temporary rule number assigned when CSD filed the rule. In the permanent rule, OAR 412-40-030(6) and (7) provide:

"Prior to the preliminary hearing, the person appointed to conduct the hearing shall assure himself or herself that the student:

"(6) Has been informed of his or her rights to appear with counsel at his or her own expense or to request counsel at school expense under the limited circumstances set forth in section (7) of this rule.

"(7) Has been provided counsel at school expense where the hearing officer finds that the student for whatever reason is unable to effectively speak for himself or herself, is indigent and:

"(a) There is a timely and substantial claim that he or she has not committed the alleged violation; or

"(b) Even though the alleged violation is uncontested or a matter of public record there are substantial reasons which justify or mitigate the violation and make revocation inappropriate and the reasons are complex or otherwise difficult to develop or present."

OAR 412-04-045(1)(g) and (3) provide:

"Within a reasonable time prior to the revocation hearing, the chairperson of the Revocation Hearing Committee shall cause the student to be provided with written notice which shall contain the following information:

" * * * * *

"(g) The student's right to be represented by an attorney at his own expense or to the assistance of counsel at School expense if the student meets the requirements of section (3) of this rule.

" * * * * *

"(3) If the student does not have counsel, the chairperson of the revocation hearing committee shall provide the student with counsel at school expense if the same grounds and reasons stipulated in section 412-40-030(7) exist."

defining when counsel will be appointed in juvenile revocation proceedings.[7] The record does not show that petitioner was ever informed of any right to counsel — the CSD notice of hearings forms do not list a right to counsel, including that granted by CSD's own rule. The hearings officer did not set forth in his report reasons for denying appointed counsel as required by OAR 412-40-030(8).[8] We will assume that that failure violated petitioner's rights under CSD's rule on advice of right to counsel. The record does show, however, that before the revocation hearing he or someone then representing him knew of his right to retain counsel or to have counsel appointed under the circumstances specified in OAR 412-40-030(6) and (7). In view of that knowledge and the record made at the parole revocation proceeding, petitioner sustained no prejudice by reason of CSD's failures, as will be discussed below.

Also for the first time in this state proceeding, petitioner asserts on appeal a state constitutional right to appointed counsel. Petitioner argues that Article I, sections 11 and 20, of the Oregon Constitution should be applied and interpreted consistently with state and federal interpretations of the Fourteenth Amendment Due Process and Equal Protection Clauses. He does not contend that his

---

[7] We do not consider the federal proceedings as part of the record on our review of the parole revocation proceeding. Although the parties appended part of the federal record to the motion to dismiss documents and to the petitioner's reply brief, the federal proceedings were never incorporated below into the revocation record.

[8] OAR 412-40-030(8) provides:

"In every case where the student has requested the assistance of counsel at school expense and such request has been denied by the hearing officer, the reason for the denial shall be set forth in the hearing officer's report."

A timely determination of the right to appointed counsel under the CSD rule is to be made before the revocation hearing. Petitioner contended, however, that it was understood that he would appear at the parole revocation hearing without counsel and that the record made there would be the basis for review of petitioner's alleged rights under *Gagnon v. Scarpelli, supra.* The record thus provided makes our review more difficult but not improper. The United States Supreme Court had a similar task in *Lassiter v. Department of Social Services,* 452 US 18, 101 S Ct 2153, 68 L Ed 2d 640 (1981), where it applied *Gagnon* to termination of parental rights proceedings on an after-the-fact analysis of the record.

rights under the state constitution are broader.[9] In that sense, the issue of a state right to appointed counsel is substantially identical to the issue of a federal right. We will assume, however, that presentation of the issue in the state claim is not collaterally estopped by the federal determination.

We will further assume, without deciding, that the protections under *Gagnon v. Scarpelli, supra,* are guaranteed to juveniles by the state constitution on a case-by-case determination, *see Lassiter v. Department of Social Services,* 452 US 18, 31-32, 101 S Ct 2153, 68 L Ed 2d 640 (1981) (saying *Gagnon* factors apply on a case-by-case basis in termination of parental rights cases), and that CSD failed to consider all the relevant factors under *Gagnon.*

■ Even assuming that to be error, we find it harmless. Petitioner had a full and fair hearing that provided him required due process. The record of the revocation hearing is before us, and we have reviewed it independently against the *Gagnon* criteria. To his credit, considering his allegedly deficient learning and language skills, petitioner appeared thoroughly prepared to confront the evidence and witnesses against him and to object to irrelevant evidence or lack of notice. Although counsel did not appear on his behalf, petitioner appeared to have had the benefit of legal advice and to have used it well. We do not condone CSD's failure to follow its rules regarding notice of right to counsel or its failure to make an adequate record of its reasons for refusing to appoint counsel. Here, however, petitioner himself made a record from which we can determine that, even if *Gagnon* applies to juvenile parole revocation proceedings, it was not error to fail to appoint counsel for him. The record shows that petitioner spoke well for himself and the issues were neither complex nor difficult. Although, as noted in *Lassiter,* a lawyer might have done more by way of argument on the facts, the absence of a lawyer did not render the proceedings

---

[9] Petitioner cites for illustration only, ORS 144.343(3)(f) and OAR 254-70-015(6)(g), which govern the right to appointed counsel in adult parole revocation proceedings and are broader than CSD's rule; he does not argue that the broader adult statute and rule result in such disparate treatment as to deny juveniles equal protection.

fundamentally unfair. Under the circumstances of this case, there was no denial of due process.[10]

Affirmed.

---

[10] In *State ex rel Adult and Family Services v. Stoutt,* 57 Or App 303, 644 P2d 1132 (1982), we applied *Gagnon* on a case-by-case basis to filiation proceedings and denied petitioner's claim of entitlement to appointed counsel for reasons similar to those given in *Lassiter.*