Argued and submitted January 6, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court with instructions to issue peremptory writ of mandamus directing county to pay judgment for $1,150,000 June 17, 2010

STATE ex rel DOROTHY ENGLISH,
Deceased,
by and through Douglas James Sellers,
Personal Representative of the
Estate of Dorothy English, Deceased,
*Respondent on Review,*

*v.*

MULTNOMAH COUNTY,
a public corporation incorporated in the State of Oregon;
Carol Ford,
in her capacity as Director of the Department
of County Management for Multnomah County;
and Mindy Harris,
in her capacity as Finance Officer for Multnomah County,
*Petitioners on Review.*

(CC 070708042; CA A137217; SC S057387)

238 P3d 980

418

419-a

Stephen L. Madkour, Assistant County Attorney, Office of Multnomah County Attorney, Portland, argued the cause and filed the brief for petitioners on review. With him on the brief was Agnes Sowle, County Attorney for Multnomah County.

D. Joe Willis, Schwabe, Williamson & Wyatt, P.C., Portland, argued the cause for respondent on review. With him on the brief were Michael T. Garone and Andrew J. Lee.

Stephanie L. Striffler, Senior Assistant Attorney General, Salem, filed a brief for *amicus curiae* State of Oregon. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Barton C. Bobbitt, Sisters, and Jeannette L. Moore, The Gilroy Law Firm, PC, Tigard, filed a brief for *amici curiae* Virginia Louise Bleeg, Darrin Black, Roger J. Miracle, Ann M. Miracle, Harold MacLaughlan, and Rebeca MacLaughlan.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, and Linder, Justices.**

BALMER, J.

---

** Gillette, J., did not participate in decision of this case. Walters, J., did not participate in the consideration or decision of this case.

**BALMER, J.**

This mandamus action requires us to determine the effect of a final judgment, containing a "money award," that was entered "pursuant to" Measure 37, a land use statute that applies here but that has now been substantially superseded by later legislation. Dorothy English, an owner of land in Multnomah County, filed a cause of action under Measure 37 against the county, ultimately obtaining a judgment "against [the county] for just compensation pursuant to the provisions of [Measure 37] in the sum of $1,150,000." Although the county initially appealed that judgment, it later dismissed its appeal. English requested payment of the trial court judgment, and, when the county failed to pay the $1,150,000, she sought mandamus to compel payment.[1] The mandamus court dismissed the alternative writ of mandamus, concluding that the trial court judgment was payable only at the county's discretion. English appealed, and the Court of Appeals reversed and remanded with instructions to issue a peremptory writ of mandamus directing the county to pay the judgment for $1,150,000. *State ex rel English v. Multnomah County*, 227 Or App 419, 206 P3d 224 (2009). We allowed the county's petition for review and, for the reasons that follow, now affirm the decision of the Court of Appeals.

## I. MEASURE 37

In 2004, the voters approved Ballot Measure 37 (2004), *codified at* ORS 197.352 (2005), *renumbered as* ORS 195.305 (2007) (Measure 37[2]), which authorized awards of "just compensation" to landowners if a government entity

---

[1] We refer to the original Measure 37 proceeding as the "trial court proceeding," to the circuit court in that proceeding as the "trial court," and to the judgment entered in that proceeding as the "trial court judgment." We refer to this case as the "mandamus proceeding" and to the circuit court in this case as the "mandamus court." The defendants in the mandamus proceeding include two county officials, acting in their official capacity, as well as the county itself. During the pendency of this proceeding, English died and her personal representative was substituted as the real party in interest. Throughout this opinion, for sake of clarity, we refer to the parties in the trial court proceeding and in the mandamus proceeding as "English" and "the county."

[2] For ease of reference, we refer to the entire statutory scheme of *former* ORS 197.352 as "Measure 37." All citations to the specific provisions of ORS 197.352 are to the 2005 version of the statute.

enforced land use regulations that reduced the fair market value of the landowners' property. In particular, ORS 197.352(1) provided:

"If a public entity enacts or enforces a new land use regulation or enforces a land use regulation enacted prior to December 2, 2004, that restricts the use of private real property or any interest therein and has the effect of reducing the fair market value of the property, or any interest therein, then the owner of the property shall be paid just compensation."

Certain land use regulations were exempt from the compensation provision, including those "[r]estricting or prohibiting activities for the protection of public health and safety." ORS 197.352(3)(B).[3] The statute authorized a landowner whose property had been affected by a nonexempt regulation to submit a "written demand for compensation * * * to the public entity enacting or enforcing the land use regulation." ORS 197.352(4), (5). If the public entity continued to apply the regulation to the property more than 180 days after the landowner made that written demand, the landowner was permitted to file an action in the circuit court:

"If a land use regulation continues to apply to the subject property more than 180 days after the present owner of the property has made written demand for compensation under this section, the present owner of the property, or any interest therein, shall have a cause of action for

---

[3] ORS 197.352(3) provided:

"Subsection (1) of this section [providing for just compensation] shall not apply to land use regulations:

"(A) Restricting or prohibiting activities commonly and historically recognized as public nuisances under common law. * * *;

"(B) Restricting or prohibiting activities for the protection of public health and safety, such as fire and building codes, health and sanitation regulations, solid or hazardous waste regulations, and pollution control regulations;

"(C) To the extent the land use regulation is required to comply with federal law;

"(D) Restricting or prohibiting the use of a property for the purpose of selling pornography or performing nude dancing. Nothing in this subsection, however, is intended to affect or alter rights provided by the Oregon or United States Constitutions; or

"(E) Enacted prior to the date of acquisition of the property by the owner or a family member of the owner who owned the subject property prior to acquisition or inheritance by the owner, whichever occurred first."

compensation under this section in the circuit court in which the real property is located, and the present owner of the real property shall be entitled to reasonable attorney fees, expenses, costs, and other disbursements reasonably incurred to collect the compensation."

ORS 197.352(6).

Measure 37 also contained a provision that permitted the public entity to waive the relevant land use regulation or land use regulations instead of paying just compensation:

"Notwithstanding any other state statute or the availability of funds under subsection (10) of this section, in lieu of payment of just compensation under this section, the governing body responsible for enacting the land use regulation may modify, remove, or not to apply [*sic*] the land use regulation or land use regulations to allow the owner to use the property for a use permitted at the time the owner acquired the property."

ORS 197.352(8). Finally, the statute contained a provision addressing both payment of claims and waiver of regulations:

"Claims made under this section shall be paid from funds, if any, specifically allocated by the legislature, city, county, or metropolitan service district for payment of claims under this section. Notwithstanding the availability of funds under this subsection, a metropolitan service district, city, county, or state agency shall have discretion to use available funds to pay claims or to modify, remove, or not apply a land use regulation or land use regulations pursuant to subsection (6) of this section [providing landowner with a cause of action for compensation]. If a claim has not been paid within two years from the date on which it accrues, the owner shall be allowed to use the property as permitted at the time the owner acquired the property."

ORS 197.352(10). The government's option, based on those sections of Measure 37, to pay compensation or to waive applicable land use regulations, is sometimes referred to as "pay or waive."

## II. FACTUAL BACKGROUND
## AND TRIAL COURT PROCEEDING

On December 2, 2004, the day that Measure 37 became effective, English filed a written demand for compensation with Multnomah County in the amount of $1,150,000. She argued that, when she purchased her property in 1953, she lawfully could have used the property by partitioning it to create two separate parcels per year and constructing single-family homes on those parcels. Ultimately, she argued, she could have created at least eight separate parcels. She listed various regulations that were being enforced against her property that she claimed prevented or restricted that originally permissible use. In response, the Board of County Commissioners issued an order (the 2005 order), in which it waived some of the 61 regulations listed in English's written demand. It refused to waive the other listed regulations, asserting that those regulations either were exempt from Measure 37 or did not prevent English from partitioning her land into two parcels per year for a total of eight parcels, the intended use that she had described in her written demand.

English was unsatisfied with the board's order, and, on May 16, 2006, she filed an action for just compensation in the Multnomah County Circuit Court. The complaint alleged that various land use regulations restricted English's intended use of the property—"partitioning it into two parcels per year and then selling the partitioned parcels for construction of single family homes and appropriate amenities"—and that, as a result, she was entitled to just compensation "in the amount of $1,150,000 (and probably an even higher figure based on information learned after submitting the written demand for Just Compensation)." The complaint alleged that that figure "represents the amount equal to the reduction in value of the fair market value of the Property on or about December 2, 2004, resulting from enactment or enforcement of the land use regulations complained of."

Two days after English filed her complaint, the board issued another order (the 2006 order), in which it waived additional regulations. The county then filed an answer to English's complaint, asserting, as an affirmative

defense, that it had waived all regulations affecting the proposed development of English's property, except "1) regulations restricting or prohibiting activities for protection of public health and safety, and 2) regulations which provide for the procedure for land divisions and development of real property in Multnomah County." The county explained that health and safety regulations are expressly exempt from Measure 37 and argued that the procedural regulations "are not within the purview of Measure 37 because they do not restrict the use of private real property."

On August 2, 2006, English moved for summary judgment, arguing that she had demonstrated that she was entitled to just compensation as a matter of law in the amount of $1,150,000 and that there was no genuine dispute as to any fact material to her claim. In the alternative, she argued that, if any factual dispute existed as to the amount of compensation due, she was entitled at least to summary judgment "on all liability issues." Again, the county responded that it had waived all nonexempt regulations and that English was therefore not entitled to any compensation. On September 22, 2006, the trial court held a hearing on English's motion for summary judgment. English argued that the waivers in the 2006 order were irrelevant because they came too late. According to English, the county was required to waive the regulations within 180 days of her written demand. Because it had failed to do so, she asserted that the county had an absolute obligation to pay her just compensation and no longer had the option to "pay or waive." In any event, she argued, the 2006 order did not waive all the relevant regulations; specifically, she argued (1) that Measure 37 did not provide the exemption that the county claimed for procedural regulations and (2) that at least some of the regulations that the county had labeled as "health and safety regulations" did not qualify for that exempt status.

The trial court granted English's motion for summary judgment as to liability. The court reasoned that, although health and safety regulations were exempt from Measure 37, the county had refused to waive "quite a few" regulations "that have nothing to do with health and safety." The court also rejected the county's position that various procedural regulations were not within the purview of Measure

37. Because "the County did fail to modify, remove or not apply various land use ordinances, including a land division ordinance[,] in its March 17, 2005 order, or in its May 18, 2006 order," the court granted English's motion for summary judgment "as to liability." However, the court refused to grant summary judgment as to the amount of just compensation, because English had presented no evidence proving the amount of the reduction in her property value that had been caused by the county's continued enforcement of the nonexempt regulations.

After the court entered an order granting English's motion for summary judgment, the county moved to bifurcate trial on the two remaining issues in the case: (1) which regulations were exempt as health and safety regulations under Measure 37 and (2) how much English's property value had been decreased by the continued enforcement of each non-exempt regulation. The court acknowledged that "there's more to the case than just trying the amount of damages," but nonetheless denied the county's motion, reasoning that "liability and damages are commonly combined in one trial."

The court then set a trial date of December 11, 2006, and the parties submitted trial memoranda. However, before trial, the county stipulated that "just compensation for the claim set forth in [English's] Complaint is $1,150,000." As a result, the court never decided which regulations were exempt as health and safety regulations[4] or how much the enforcement of each individual regulation decreased the value of English's property.

The parties then submitted proposed forms of judgment. Each party's proposed judgment stated that English would "have judgment against [the county] for just compensation pursuant to the provisions of ORS 197.352 in the sum of $1,150,000." Each party's proposed judgment also included

---

[4] English did stipulate that some of the regulations were, in fact, health and safety regulations under Measure 37. However, English and the county continued to disagree as to other regulations.

a separate section labeled "Money Judgment," including information such as the judgment creditor's name and address, the judgment debtor's name and address, and the amount of the award.[5] The county's proposed judgment included an additional paragraph, stating that "pursuant to ORS 197[.]352(10)[,] the judgment for $1,150,000 shall be payable only from funds, if any, specifically allocated by [the county] for payment of claims under ORS 197.352." The only other significant difference between the two judgments was that English's proposed judgment included interest in the "Money Judgment" section, and the county's did not.

At the hearing on the form of judgment, the trial court first concluded that English was not entitled to interest. When English offered to "type * * * up" a new judgment that did not include interest, the court noted that the county had submitted a proposed judgment that did not include interest. The court was concerned, however, about the additional paragraph providing that the judgment would be payable only from specifically allocated funds, stating that it "would sign a judgment exactly like this one that was submitted without that paragraph. Because the actual statute has other provisions that allow the County to use its discretion to pay it from other available funds and so forth." The court reasoned, "The law is what it is, and I don't think it's necessary to be included in the general judgment." The county argued that it was important to include the statutory wording regarding the specifically allocated funds so as to limit English's ability to enforce the judgment, but the court stated, "My preference would be to just say that the judgment shall be payable pursuant to [ORS] 197.352(10)."

Several days after the hearing, the court entered a judgment. That judgment was entitled "General Judgment" and provided, in part:

"Based on the stipulation of the parties as to just compensation,

---

[5] English's original proposed form of judgment labeled the section "Money Judgment Information To Comply with ORCP 70A(2)(a)." The county noted in its objection to English's proposed form of judgment that ORCP 70 A had been repealed and that the relevant statute was ORS 18.042.

"IT IS HEREBY ORDERED AND ADJUDGED:

"1. That [English] have judgment against [the county] for just compensation pursuant to the provisions of ORS 197.352 in the sum of $1,150,000.

"2. That [English] have judgment for her reasonable attorney fees, expenses, costs and other disbursements reasonably incurred pursuant to 197.352, ORCP 68 and Supplemental Judgment.

### "MONEY JUDGMENT

| | |
|---|---|
| "Judgment Creditors: | Dorothy English |
| "* * * * * | |
| "Judgment Debtors: | Multnomah County, Oregon |
| "* * * * * | |
| "Amount of Money Judgment: | $1,150,000 |
| "Pre-Judgment Interest: | None. |
| "Post-Judgment Interest: | None. |
| "Attorney Fees, Expenses, Costs, and Other Disbursements: | To Be Determined Pursuant to ORS 197.352, ORCP 68 and Supplemental Judgment" |

The court later entered a corrected judgment, in which it crossed out the word "Judgment" in the section heading "MONEY JUDGMENT" and replaced it with the word "Award," to track the wording of ORS 18.042, which describes the information that must be included in a judgment in order to create a judgment lien.[6] The county appealed.

On February 15, 2007, a little over a month after the trial court had entered the trial court judgment, the board

---

[6] ORCP 70 A used the term "Money Judgment" in describing the section containing the information that must be included in a judgment to create a judgment lien. As noted, that rule had been repealed at the time of entry of judgment. It appears that the use of the term "Money Judgment" was an oversight, carried over from English's original form of judgment.

issued a third order, in which it waived the procedural rules, provided a process for English to request approval of her new parcels, and listed several regulations that would continue to be enforced as "health and safety" regulations. On that same day, the county moved to dismiss its appeal of the trial court judgment. The Court of Appeals granted the motion, and the appellate judgment issued on February 23, 2007. On May 24, 2007, the board issued a fourth order, in which it waived another "health and safety" regulation and modified the process for English to request approval of her parcels. English maintains that even the fourth order did not waive all necessary regulations.

## III. MANDAMUS PROCEEDING

On June 6, 2007, English sent the county a certified copy of the trial court judgment and requested that the county pay the $1,150,000 money award. *See* ORS 30.390 (describing process for obtaining satisfaction of judgment against a public corporation). The county failed to pay, and English initiated this mandamus action. The mandamus court issued an alternative writ of mandamus, directing the county to pay the award or show cause why it had not done so. The county moved to dismiss the alternative writ, arguing that, even after English's claim was reduced to a final judgment, the county retained the discretion to determine whether it would pay the award of just compensation or waive the applicable regulations. The county argued that it had exercised its discretion to waive the applicable regulations, and it therefore was not required to pay the $1,150,000 award. The trial court granted the county's motion, concluding that "a judgment entered pursuant to [Measure 37] is payable only at the discretion of the government[ ] and that [English] cannot compel the payment of the judgment."

English appealed, arguing that, because the county had dismissed its original appeal and allowed the trial court judgment to become final, it was prohibited from raising any defenses that it may have had under Measure 37 to the judgment requiring it to pay just compensation. The county responded that English's claim was moot in light of the passage of Ballot Measure 49 (2007), Oregon Laws 2007, chapter 424 (Measure 49), which fundamentally altered the claims

and remedies that previously had been available to land-owners under Measure 37. The county also contended that claim preclusion did not prohibit its defenses to English's attempt to collect the judgment and that, under Measure 37, the county had complete discretion as to whether to pay the judgment.

The Court of Appeals reversed and remanded with instructions to the trial court to issue a peremptory writ of mandamus directing the county to pay the $1,150,000 judgment. The court first concluded that Measure 49 did not deprive final *judgments* that had been issued pursuant to Measure 37 of continuing viability. Thus, because English's Measure 37 claim had been reduced to a final judgment, Measure 49 did not prevent her from seeking enforcement of that judgment. *English*, 227 Or App at 428. Next, the court held that the county was prohibited from raising defenses that it could have raised in the underlying trial court proceeding—in particular, its defenses (1) that it was not required to pay English just compensation because it had not specifically allocated funds for that purpose; (2) that it was not required to pay just compensation because it had waived all land use regulations that restricted English's intended use of her property; and (3) that, two years after English's cause of action accrued, the land use regulations were automatically waived under Measure 37, and the county therefore was not required to pay just compensation. *Id.* at 430-33. Finally, the court held that Measure 37 did not make payment of the final, unconditional judgment contingent upon the county's exercise of discretion. *Id.* at 433. The county then filed a petition for review, which we allowed.

## IV.  ANALYSIS

### A.  *Effect of Measure 49*

On review, the county first renews its argument that English's claim for just compensation is controlled by Measure 49 and that the judgment that she received pursuant to Measure 37 therefore has no continuing legal effect. In November 2007, more than eight months after English's trial court judgment became final, Oregon voters approved Measure 49, which altered the remedies and procedures that had been available under Measure 37. As we explained in

*Corey v. DLCD*, 344 Or 457, 465, 184 P3d 1109 (2008), Measure 49 "extinguish[ed] and replace[d] the benefits and procedures that Measure 37 granted to landowners." Further, "Measure 49 pertains to *all* Measure 37 claims, successful or not, and regardless of where they are in the Measure 37 process." *Id.* (emphasis in original). As a result, the county argues, Measure 49 applies to English's claim, despite the fact that she was successful in obtaining a final judgment against the county pursuant to Measure 37. According to the county, English must pursue her claim under Measure 49, rather than requesting that the court enforce her final judgment by writ of mandamus. In short, the county argues that the passage of Measure 49 renders English's Measure 37 judgment unenforceable.

■  We disagree. As the Court of Appeals correctly reasoned, when a claim is reduced to a final judgment, the underlying claim is extinguished, "merging" into the judgment; as a result, the "rights upon the judgment are substituted for the former claim." *Barrett and Barrett*, 320 Or 372, 378, 886 P2d 1 (1994). For example, if a trial court incorporates a contract, such as a settlement agreement in a dissolution case, into its final judgment, then the parties' contract claims are extinguished, and the parties' rights to enforce the judgment are substituted for the previously held rights on the contract. *See Webber v. Olsen*, 330 Or 189, 196, 998 P2d 666 (2000) (noting that once settlement agreement is incorporated into judgment, contractual remedies are no longer available); *see also Rigdon v. Rigdon*, 219 Or 271, 276-79, 347 P2d 43 (1959) (concluding that settlement agreement merged with judgment).

That rule applies equally in this context: English's Measure 37 claim was extinguished once her claim was reduced to a final judgment. When the county dismissed its appeal and the Court of Appeals issued the appellate judgment, English's rights under Measure 37 were replaced with her rights—if any—under the trial court judgment. The issue in this mandamus proceeding, therefore, is the interpretation and enforceability of English's final judgment against the county in the amount of $1,150,000, not the propriety of her claim under Measure 37. Although, as we discuss below, the proper interpretation of Measure 37 might become relevant

in interpreting the trial court judgment, it is the judgment that controls. Our interpretation of the judgment and our determination as to whether that judgment is enforceable are not controlled by Measure 49, as Measure 49 supersedes only those proceedings that are governed by Measure 37. *See Corey*, 344 Or at 466-67 (Measure 49 applies to Measure 37 claims and nullifies "orders disposing of Measure 37 claims"). The Court of Appeals correctly determined that the final judgment in this case was not voided by Measure 49.[7]

## B. *Claim Preclusion*

■■    Having determined that Measure 49 did not void the trial court judgment, we turn to whether the county is prohibited by principles of claim preclusion from asserting certain defenses in this mandamus proceeding. We begin with a brief overview of the principles concerning the preclusive effect of a final judgment. As this court noted in *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990), the overarching principle of preclusion "comprises two doctrines: claim preclusion, also known as *res judicata*, and issue preclusion, also known as collateral estoppel."[8] (Footnotes omitted.) Further, the doctrine of claim preclusion can be separated into two concepts: the rule of merger and the rule of bar. *See Restatement (Second) of Judgments* § 17 (1982) (describing merger, bar, and issue preclusion); *see also Ira v. Columbia Food Co. et al*, 226 Or 566, 570, 360 P2d 622 (1961) ("The term *res judicata* is frequently used in a broad sense as including merger, bar, [and issue preclusion].").

■■    Issue preclusion prevents parties from relitigating issues that were actually litigated and determined in a prior action. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103-04, 862 P2d 1293 (1993). *See also Restatement* § 27 (describing issue preclusion). Claim preclusion is broader

---

[7] The county similarly argues that "English's claim for just compensation relies on a now non-existent statutory provision"—Measure 37—and that her claim must fail because "there is no present legal authority for English's claim for compensation." For the reasons discussed above, the "legal authority" for English's claim is the trial court judgment itself, not Measure 37.

[8] Before *Drews*, this court had referred to preclusion principles generally—including both issue and claim preclusion—as *res judicata*. We now use "the more exact terms 'claim preclusion' or 'issue preclusion' to denote the respective branches of preclusion by former adjudication." *Drews*, 310 Or at 139.

than issue preclusion in that it may bar litigation of an issue that could have been raised, even if that issue was not actually raised, in an earlier proceeding. *Drews*, 310 Or at 140. As noted, claim preclusion can be separated into two concepts: the rule of merger and the rule of bar.

■■ We turn first to the rule of merger.[9] As discussed above, once a plaintiff obtains a valid, final judgment, the plaintiff's underlying claim merges into the final judgment and is extinguished. For that reason, the plaintiff can no longer maintain an action on the underlying claim. *See Barrett*, 320 Or at 378 (describing principles). The plaintiff may, however, be able to maintain an action to enforce and effectuate the judgment, and, in that action, "the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action." *Restatement* § 18; *see also Security Inv. Co. v. Miller*, 189 Or 246, 251, 218 P2d 966 (1950) (describing merger and conclusive effect of judgment). In other words, when a plaintiff seeks to enforce a valid judgment, the defendant may not collaterally attack the judgment as being erroneously issued.

■■ The second aspect of claim preclusion, known at common law as the rule of bar, is the principle most often described by the term "claim preclusion." That rule prohibits parties from splitting claims by requiring plaintiffs to "bring all claims arising from the same factual transaction or circumstances in a single action." *Peterson v. Temple*, 323 Or 322, 327, 918 P2d 413 (1996). Thus, a plaintiff who has brought an action against a defendant and obtained a final judgment in that action is prohibited from later bringing an action against the same defendant based on the same factual transaction or circumstances.

■■ In past cases, this court has referred to the foregoing concepts collectively as claim preclusion, often without distinguishing between merger and bar. In *Drews*, for example,

---

[9] The rule began as one of common law, but ORS 43.130(2) now codifies it:

"[A] judgment, decree or order is, in respect to the matter directly determined, conclusive between the parties, their representatives and their successors in interest by title subsequent to the commencement of the action, suit or proceeding, litigating for the same thing, under the same title and in the same capacity."

after describing the rule of bar, the court noted that "[c]laim preclusion applies equally to a defendant's defense."[10] 310 Or at 140. For that proposition, the court cited section 18 of the *Restatement*, the section dealing with the rule of merger. *Id.* It is true, as discussed above, that the rule of *merger* applies to a defendant's defense: a defendant cannot raise defenses in an action to enforce a judgment that he or she did raise or could have raised in the action in which the judgment was entered. However, the statement from *Drews* can create confusion, because, in Oregon, the rule of *bar* does not apply in the same way; instead, under the rule of bar, if, in one action, certain facts create both a defense and a counterclaim, "failure to assert such facts, either as a defense or as a counterclaim, does not preclude [the] defendant from thereafter bringing a separate action based upon those facts." *Buck v. Mueller*, 221 Or 271, 277, 351 P2d 61 (1960).[11] That is because, in Oregon, unlike in the federal courts, there are no compulsory counterclaims. *Compare* FRCP 13(a) (pleading "must state" certain claims as counterclaims) *with* ORCP 22 A (defendant "may set forth" counterclaims). We therefore refer to the rule at issue in this case as the rule of merger, rather than the more generic term of "claim preclusion."

■　With the foregoing framework in mind, we return to the parties' arguments in this case. English argues that the county is prohibited, by the principles of claim preclusion discussed above, from raising its Measure 37 defenses in this mandamus action and that the county is bound by the trial court's valid, final judgment. Although English uses the more

---

[10] Indeed, the Court of Appeals quoted that sentence from *Drews* in its claim preclusion analysis and, throughout its opinion, referred to "claim preclusion" generally, without distinguishing between the concepts of merger and bar. *State ex rel English v. Multnomah County*, 227 Or App 419, 429-33, 206 P3d 224 (2009). Although we agree that the rule of merger prohibits the county from raising any defenses in this mandamus proceeding that it could have raised in the trial court proceeding, for the reasons discussed in the text, we refer to the relevant rule as the rule of merger rather than by the generic term "claim preclusion," which also describes the rule of bar.

[11] Of course, if the defendant actually raises a counterclaim in the first action, the rule of bar applies as though the defendant was a plaintiff in the first action. Further, the rules of issue preclusion apply so that "a party can not recover in a separate action on a cause of action which he failed to plead in a prior action by way of setoff or counterclaim but which was necessarily adjudicated by the former judgment." *Gwynn v. Wilhelm*, 226 Or 606, 610, 360 P2d 312 (1961).

general term "claim preclusion," the substance of her argument is correct, and the county is prohibited, by the rule of merger, from raising any defenses in this mandamus proceeding that it could have raised, or that it raised and lost, in the original trial court proceeding.

The county argues, however, that it is not prohibited from "asserting its defenses to the collectability of the [trial court] judgment based on the plain language of [Measure 37]," because it could not have raised those defenses in the trial court proceeding. The county contends that the only issue in the trial court proceeding was the amount of compensation, not the county's obligation to pay compensation. The county reasons that the sole purpose of the cause of action provision of Measure 37 was to provide a procedure for liquidating Measure 37 claims, after which the governing body (here, the county), could decide whether to pay the liquidated amount or to waive the regulation. In the county's view, the trial court judgment determined only that the value of English's claim was $1,150,000, and not that the county was required to pay that amount. Thus, the county argues, it would have been premature for the county to raise any defense during the trial court proceeding concerning the county's obligation to pay.

We view the county as arguing, at least in part, that the trial court judgment potentially created no remedy at all for English. In other words, the county appears to argue that, after the trial court entered the judgment, the county retained the following options: (1) to pay English $1,150,000, but only if it specifically allocated funds for that purpose as described in ORS 197.352(10); (2) to affirmatively waive all relevant land use regulations; or (3) to do nothing, in which case all relevant regulations would be automatically waived two years after English's cause of action accrued, by operation of ORS 197.352(10). Under the third circumstance, applying the county's reasoning, English would have no remedy under the judgment; instead, her only remedy would be the automatic waiver already contained in Measure 37.

To the extent that the county argues that the trial court judgment creates *no* remedy for English—and imposes no obligation on the county—we disagree. As noted, the trial

court granted English's motion for summary judgment "as to liability" after determining that the county had continued to enforce nonexempt land use regulations that decreased the value of English's property. Although we agree with the county that the trial court did not necessarily conclude, in granting English's motion for summary judgment, that English was entitled to *payment,* the trial court did conclude that English was entitled to *some* remedy—either payment or waiver of the land use regulations. Thus, we cannot agree with the county that the judgment determined only the amount of compensation and granted English no remedy at all.

## C.  *Interpretation of Trial Court Judgment*

█     We also read the county's brief as raising an additional, slightly more nuanced argument than the one just described—an argument based on its interpretation of the judgment itself. At times, the county appears to concede that the trial court judgment grants *some* remedy to English; the county nonetheless argues that it retained discretion to elect whether that remedy would be payment or waiver of the regulations. In other words, the trial court judgment, although creating an obligation to pay, *conditioned* that obligation on the county's continued enforcement of the relevant land use regulations. According to the county, that is so because the judgment expressly provides that it was entered "pursuant to the provisions of [Measure 37]," and Measure 37, in turn, provides the county with the discretion to either pay just compensation or waive the applicable land use regulations. As a result, the county appears to argue, the *judgment* provides the county with the discretion to either pay or waive the regulations.

The county's argument might be plausible if we considered, in isolation, the wording in the judgment that states that it is a judgment against the county "for just compensation *pursuant to the provisions of [Measure 37].*" (Emphasis added.) However, the remainder of the judgment indicates that the trial court intended to enter an unconditional judgment awarding $1,150,000 to English. Initially, we note that the court included a section labeled "money award," which, like other judgments making unconditional awards of money,

included information about English, identified as the "judgment creditor," and information about the county, identified as the "judgment debtor." ORS 18.042 requires that any "judgment document for a judgment in a civil action that includes a money award" contain a section, like the one included in the judgment here, that is "clearly labeled as a money award" and that provides certain information about the judgment creditor and judgment debtor. ORS 18.005(14) then defines a "money award" as "a judgment or portion of a judgment that *requires the payment of money*." (Emphasis added.) Thus, by including the section labeled "money award," along with the information required by ORS 18.042, it appears that the trial court intended for the judgment to require the payment of money.

Moreover, the trial court did not indicate—in the trial court judgment, a letter opinion, or elsewhere—which regulations the county would be required to waive to avoid paying just compensation. It is likely that, if the trial court had intended the judgment to require either payment of $1,150,000 or waiver of certain land use regulations, the court would have included a list of the land use regulations that the county would need to waive to satisfy the judgment. That is particularly true because it is apparent from the trial court record that the court understood that the parties disagreed as to which regulations were exempt from Measure 37 and which regulations reduced the value of English's property; indeed, that was the focus of the hearing on English's motion for summary judgment. The county's argument appears to assume that the trial court intended for that issue to be resolved in a later proceeding. That is, once the county had waived certain regulations, English would bring *another* action to determine whether she was entitled to recover some or all of the $1,150,000 award contained in the judgment. However, the trial court labeled the judgment a "general judgment," thereby indicating that the document was a "concluding decision of [the] court" and "decide[d] all requests for relief in the action." ORS 18.005(7), (8). As a result, we do not interpret the judgment as leaving open the issue of what was required to satisfy the judgment. Instead, it appears that the court included in the text of the judgment what was required to satisfy it: payment of $1,150,000.

The county argues that, despite the text of the judgment itself, the trial court's statements at the hearing on the form of judgment indicate that the court did not intend to require the payment of money when it entered the trial court judgment.[12] As noted, the trial court expressed concern about a paragraph in the county's proposed judgment that provided that the judgment would be payable only from specifically allocated funds, "[b]ecause the actual statute has other provisions that allow the County to use its discretion to pay it from other available funds and so forth." The court added, "The law is what it is, and I don't think it's necessary to be included in the general judgment." When the county urged the court to include the text from Measure 37 in the judgment so as to limit the county's liability, the court responded that its preference "would be to just say that the judgment shall be payable pursuant to [ORS] 197.352(10)."

Admittedly, the trial court's statements at the hearing are not crystal clear. Those statements are open to several interpretations, including that the trial court believed (1) that the judgment would require payment of $1,150,000, (2) that the judgment would require either payment of $1,150,000 or waiver of some or all complained-of land use regulations, or (3) that the court did not need to determine what the judgment would require, because a later court would sort it out. However, the court more clearly explained that it was reluctant to include the county's proposed provision because, notwithstanding the availability of specifically allocated funds, the county could "use its discretion to pay * * * from other available funds." *See* ORS 197.352(10) (so stating). Thus, although some of the court's later statements imply that the court believed that it did not need to determine whether the judgment could be satisfied by a later waiver, the record of the proceedings that resulted in the judgment, taken as a whole, suggests that the trial court intended the judgment to unconditionally require payment. In any event, the trial court judgment itself appears to unconditionally require the payment of money, and the court's

---

[12] The county also argues that the trial court's statements indicate that the court intended the judgment to determine the amount of compensation alone, without creating any obligations or remedies. For the reasons discussed above, we reject that argument.

statements at the hearing on the form of judgment do not convince us that the court intended otherwise. We do not read the trial court's equivocal statements at a brief, informal hearing to contradict the text of the judgment, which sets out a "money award" like any other judgment requiring the payment of money. We therefore interpret the judgment as a general judgment requiring payment of $1,150,000.

We now turn to an argument by the county that is based on the alleged similarity between the framework of ORS chapter 35, which governs condemnation proceedings, and Measure 37. In brief, the county argues that the condemnation statutes permit a condemner to litigate the amount of compensation that it would be required to pay a property owner and only *then* to decide whether to pay that amount and take the property or, instead, not to take the property; Measure 37, the county asserts, should be construed similarly.

Pursuant to the condemnation statutes, a "condemner"—an entity with the power to exercise the right of eminent domain—that wishes to condemn property must seek out the owner of the property and attempt to reach an agreement as to the compensation to be paid for taking the property. *See* ORS 35.215(1) (defining "condemner"); ORS 35.235 (describing agreement). If the condemner cannot locate the owner or cannot agree with the owner as to the amount of compensation, the condemner may commence an action to condemn the property. ORS 35.245(1). The parties then litigate the amount of compensation at trial. *See* ORS 35.305 (describing conduct of trial). As the county correctly points out, it may be difficult for the condemner to decide whether to condemn the property without first liquidating the amount of compensation that it will be required to pay for the property. As a result, the condemnation statutes provide ways for the condemner to elect *not* to take the property, even after the jury renders a verdict determining the property value. For example, a condemner may, within 60 days after a verdict on the compensation amount, elect not to take the property, ORS 35.335(3), and thus avoid paying compensation. And the judgment in a condemnation case is, by statute, a conditional judgment. *See* ORS 35.325 (after jury assesses compensation, court "shall give judgment appropriating the

property in question to the condemner, *conditioned upon* the condemner's paying into court the compensation assessed by the jury" (emphasis added)).

The county is correct in pointing out that there are procedures in a condemnation action by which the condemner can avoid paying a compensation amount that already has been determined in a legal proceeding by electing not to take the property. The county may also be correct that similar alternatives might have been available in Measure 37 actions. For instance, the trial court in this case might have entered a judgment that explicitly conditioned the payment of $1,150,000 on the county's continued enforcement of certain land use regulations and thereby given the county the express option to "pay or waive." Alternatively, the trial court might have granted the county a certain amount of time, before entering the judgment, to consider whether to waive the regulations or pay the compensation amount. Here, however, the court did not. As described above, the trial court instead entered an unconditional judgment awarding English $1,150,000. The county's arguments regarding the benefits of first liquidating the amount of compensation and then allowing the governmental entity to decide whether to pay should have been made before the trial court and on direct appeal of the trial court judgment. They were not. Rather, despite the county's argument that the trial court include a provision in the trial court judgment limiting English's ability to enforce the judgment, the trial court entered a judgment that required the county to pay English a specified amount. The county appealed but, for whatever reason, dismissed its appeal.

In sum, we conclude that the trial court judgment is an unconditional money award, requiring the county to pay English $1,150,000. The county had the opportunity to litigate the form of judgment and to request a judgment that either expressly was conditioned on continued enforcement of the land use regulations or expressly indicated that it determined only the amount of compensation and did not create any obligation or remedy. If the county had wanted to achieve that result in the trial court, its remedy when it did not was to file a direct appeal. English obtained a final, unconditional judgment, including a money award, and the

county cannot now collaterally attack that judgment as erroneous. We therefore have no occasion to address the majority of the county's arguments concerning the proper construction of Measure 37.

### D. *Validity of Trial Court Judgment*

Having concluded that the trial court judgment unconditionally requires the payment of money, the only remaining issue is whether Measure 37 itself prohibits or voids otherwise final, unconditional judgments. *See State v. McDonnell*, 343 Or 557, 562, 176 P3d 1236 (2007) ("[A] *void* judgment is subject to collateral attack, while a *voidable* judgment is subject only to direct attack." (Internal quotation marks omitted; emphasis in original.)). In other words, the county's only remaining argument is that, even if the trial court intended to enter an unconditional judgment requiring the payment of money, because of the framework of Measure 37, it was not permitted to do so, and the trial court judgment is therefore unenforceable.

■■ ■■ That argument is not well taken. "[W]hen a trial court has both subject-matter and personal jurisdiction, a judgment issued in excess of the court's authority is voidable, not void." *McDonnell*, 343 Or at 563. Thus, even if the county were correct that the trial court exceeded its authority under Measure 37 by entering a judgment that unconditionally requires the payment of money, the trial court judgment would nonetheless be immune from collateral attack, because such a judgment would be only "voidable." The only issue that the county can raise in this mandamus proceeding is whether the trial court judgment is void, not whether the trial court exceeded its authority under Measure 37 by entering the trial court judgment.

The county correctly notes that certain provisions of Measure 37 indicate that the county (and other governing bodies) has discretion to decide whether to pay claims for just compensation or waive the applicable land use regulations. *See* ORS 197.352(8), (10) (so providing). However, to the extent that the county argues that those provisions also void final judgments that include unconditional money awards, we disagree. The county has pointed to nothing in the text of Measure 37 that would indicate such an intent, and we will

not assume that the voters intended to create such an extraordinary result without having it clearly expressed in the measure that they approved.[13]

## V. CONCLUSION

The Court of Appeals correctly concluded that the county's defenses to enforcement of the trial court judgment are either barred by preclusion principles or lack merit. The trial court judgment is a final, valid judgment that requires that the county pay English $1,150,000. We therefore affirm the decision of the Court of Appeals, reversing the judgment of the mandamus court.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court with instructions to issue a peremptory writ of mandamus directing the county to pay the judgment for $1,150,000.

---

[13] The county also argues that English's death extinguishes her rights under the trial court judgment. We reject that argument without discussion.