Argued and submitted January 16, reversed May 9, reconsideration denied June 29, petition for review denied July 31, 1984 (297 Or 546)

# UNIVERSAL IDEAS CORP.,
*Appellant,*

*v.*

# ESTY,
*Respondent.*

## (16-82-04580; CA A27835)

681 P2d 1176

Eric R.-T. Roost, Eugene, argued the cause and filed the briefs for appellant.

Willard Bodtker, Albany, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff (Universal) appeals from a judgment dismissing its claim against defendant (Esty) for liquidated damages resulting from breach of an alleged agreement not to compete. The trial court found that Universal was collaterally estopped from maintaining the action by an earlier Linn County decision involving the same parties. We reverse.

Universal, as seller, entered into a written contract with Esty, as purchaser, on October 16, 1975. Under the terms of the contract, Universal trained Esty in the operation of its gourmet club business and granted him the exclusive right to use Universal's business name, "The Family Gourmet Club," in Jackson County for one year. Universal alleges Esty further agreed that, at the end of the year, he would not engage in a business similar to Universal's for a period of ten years.

On February 16, 1976, Universal filed a complaint in Linn County Circuit Court, claiming that Esty was conducting a gourmet club promotion in violation of the alleged noncompete clause contained in paragraph 6 of the contract,[1] which provides:

> "Purchaser agrees that for ten (10) years from the expiration of this contract, or any extensions thereof, that Purchaser will not in any way engage in the type of business operated by Purchaser under the assumed business name transferred herein, anywhere in Oregon, Washington, Idaho, or Northern California, and further will agree never to disclose any of the secrets, techniques, procedures, or any other information whatsoever about the manner and form in which this business is operated, and, the parties hereto agree that it would be virtually impossible to assess damages for violation of this noncompetition agreement, or this nondisclosure agreement, and, therefore, stipulate and agree that the violation of this portion of this agreement would cause damages to Seller in the sum of $100,000.00."

---

[1] The record does not disclose why the commencement of Esty's business in Linn and Benton Counties constituted a breach of the agreement. However, we infer it was because he engaged in a similar business in counties not covered by the agreement. The trial court stated in its ruling that the agreement was primarily for the purchase of the assumed business name. Based on that conclusion, it presumably believed that engaging in a similar business under a different name would not be precluded by the agreement.

On December 7, 1978, the trial court entered judgment on that action, concluding that Universal was not entitled to recover against Esty.[2] In the judgment, the trial court found that the agreement was primarily for the purchase of the assumed business name "The Family Gourmet Club" and that Esty's business activities did not violate paragraph 6 of the agreement. The Linn County clerk failed to mail a copy of the judgment or a notice of the date of entry of judgment to the parties, as required by former ORS 18.030 (now ORCP 70B(1). When Universal learned of the entry of the adverse judgment more than 30 days after its entry, an appeal was filed. We dismissed that appeal for lack of jurisdiction, because it was not filed within 30 days from the entry of judgment, as required by ORS 19.026(1).[3]

On June 1, 1982, Universal filed this action in Lane County, alleging that, after the Linn County decision, Esty had engaged in ten additional promotions in violation of their original agreement. Esty's answer pleaded facts sufficient to raise the defense that Universal was collaterally estopped by the original Linn County judgment from asserting that their agreement precluded such competition.[4] On March 14, 1983, the Lane County trial court entered a judgment from which this appeal is taken, concluding that Universal's claim was barred by collateral estoppel and dismissing that action.

■    Three elements are necessary in order for a litigant to be barred from relitigating an issue decided in a previous action in which the litigant or one in privity with the litigant was a party: (1) the prior action must have resulted in a final judgment, (2) the issue or determinative fact to be established in the second case is identical to one which must have been

---

[2] Shortly thereafter, Universal filed two other complaints against Esty in Linn County, alleging that he had engaged in similar businesses in Marion County, in Boise, Idaho, and in Spokane, Washington. After the first case was decided, Universal and Esty stipulated to an order of dismissal with prejudice of these two complaints. Our opinion does not affect those dismissals.

[3] Universal subsequently filed a negligence action against Linn County. On appeal from that case, we held that Universal was entitled to a new trial, because the trial court erred in concluding that plaintiff was collaterally estopped to challenge the correctness of the ruling made in the Linn County decision. *Universal Ideas v. Linn County*, 64 Or App 805, 669 P2d 1165 (1983).

[4] Esty's answer mistakenly claims "res judicata" but contains the ultimate facts necessary to raise collateral estoppel.

determined in order for the result in the first case to have been reached, and (3) the party against whom the adverse judgment was previously rendered was given a "full, complete, and fair opportunity to litigate the issue." *Bahler v. Fletcher,* 257 Or 1, 19, 474 P2d 329 (1970).

The Linn County judgment was a final judgment, and the issue presented in this case is identical.

"Once the court has concluded that the evidence is sufficient to establish that an identical issue was actually decided in a previous action, 'prima facie the first judgment should be conclusive.' *Bahler v. Fletcher,* 257 Or at 20. The burden then shifts to the party against whom estoppel is sought to bring to the court's attention circumstances indicating the absence of a full and fair opportunity to contest the issue in the first action or other considerations which would make the application of preclusion unfair. Whether the proffered circumstances and considerations warrant a conclusion that the litigant lacked a 'full and fair' opportunity to litigate the issue and that it would be otherwise 'unfair' to preclude him from contesting the issue again are likewise questions of law. * * *" *State Farm v. Century Home,* 275 Or 97, 105, 550 P2d 1185 (1976).

In order to determine whether the parties received a full and fair opportunity to litigate, we make a particularized examination of the prior action. The investigation involves a policy judgment balancing the interests of an individual litigant against the interests of the administration of justice, and we decide where the balance is to be struck in any given case. If actual unfairness will result, collateral estoppel should not be applied. *Bahler v. Fletcher, supra,* 257 Or at 11-16.

Universal claims that there was not a full, complete and fair opportunity to litigate its claims in the Linn County decision, because Universal was deprived of its right to appeal the adverse judgment through no fault on its part. Universal argues that it would have successfully appealed the adverse judgment in a timely manner had the Linn County clerk complied with the duty to notify Universal that judgment had been entered. The narrow issue presented is whether it would be fair to preclude a party from relitigating an issue in a subsequent action alleging new damages when the plaintiff's appeal was dismissed because the court clerk failed to notify

the parties of the entry of the judgment before the time for appeal expired.

Before 1973, there was no obligation on court officials to notify the parties when a judgment was entered. The parties could rely only on their own diligence to discover when a judgment was entered and the time within which to appeal the judgment began to run. Even when a party relied on misleading information provided by the court as to when the judgment was filed and the delay ran past the time for filing an appeal, effectively foreclosing an appeal, the judgment was held valid and the time for appeal was not extended. *Haas v. Scott et al,* 115 Or 580, 239 P 202 (1925); *Tongue v. Brewster,* 35 Or 228, 58 P 38 (1899).

The 1973 legislature amended ORS 18.030 to impose a statutory obligation on the court clerk to mail a copy of the judgment and the notice of the date of judgment to each party not in default for failure to appear on the day judgment is entered. Although the clerk's failure to comply with the statute may be a basis for a negligence action, *Universal Ideas v. Linn County,* 64 Or App 805, 669 P2d 1165 (1983), the Supreme Court has held that the original judgment remains valid, even when the delay runs past the time for filing an appeal, effectively precluding an appeal in a particular case. *Far West Landscaping v. Modern Merchandising,* 287 Or 653, 601 P2d 1237 (1979). That is a jurisdictional problem. Whether, however, to give that judgment and the findings implicit in it effect in other cases between the parties or those in privity with them is a policy decision.

■ The availability of a review for correction of error is a critical factor in the application of collateral estoppel or issue preclusion. *See Dean v. Children's Services Division,* 57 Or App 521, 527, 645 P2d 581 (1982). Restatement (Second) Judgments, § 28 (1980), adopts this view:

> "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> "(1)   The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; * * *

"* * * * *"

That, of course, does not mean that an appeal must take place but that there must have been an opportunity to appeal, regardless of whether the party chose to exercise the option. For example, in *Standefer v. United States,* 447 US 10, 100 S Ct 1999, 64 L Ed 2d 689 (1980), the Supreme Court held that the government was not collaterally estopped by a verdict in favor of a codefendant prosecuted under the same facts, because the government has no right to appeal an adverse verdict in a criminal case. In a footnote, Chief Justice Burger noted:

> "* * * The estoppel doctrine, however, is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted." 447 US at 23 n 18.

*See also PIC, Inc. v. Prescon Corp,* 485 F Supp 1302 (D Del 1980) (absence of the right to appeal an adverse ruling of Patent Trademark Office Board of Appeals held to be a particularly significant deficiency supporting the federal court's decision not to apply collateral estoppel and to allow the plaintiff the opportunity to relitigate the issue of fraud in the procurement of patent).

■ This case presents a unique set of events. Although Universal's real opportunity to appeal was foreclosed by the clerk's negligence, the appeal was not precluded as a matter of law. In effect, Universal is bound by the judgment, even though it lost the opportunity to appeal through circumstances beyond its control. Under these circumstances, we cannot say that it is fair to preclude Universal from relitigating the issues decided in the previous action.

Reversed.