Argued and submitted November 6, 2014, affirmed July 1, 2015

STEWART TITLE GUARANTY COMPANY,
a Texas corporation,
*Plaintiff-Respondent,*

*v.*

STATE OF OREGON,
acting by and through the
Department of Consumer and Business Services,
*Defendant-Appellant.*

Marion County Circuit Court
11C16094; A151470

354 P3d 744

Marilyn J. Harbur, Senior Assistant Attorney General, argued the cause for appellant. With her on the briefs was Ellen F. Rosenblum, Attorney General.

Jon W. Monson argued the cause for respondent. With him on the brief were G. Kevin Kiely and Cable Huston Benedict Haagensen & Lloyd LLP.

Scott G. Seidman and Tonkon Torp LLP filed the brief for *amicus curiae* National Association of Insurance Commissioners.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

In this case, we decide whether issue preclusion barred the state's claims against Stewart Title Guaranty Company (Stewart Title). The Department of Consumer and Business Services (DCBS or department) sought to assess "retaliatory taxes" under ORS 731.854 for tax years 2009, 2010, and 2011. In an action for declaratory relief, Stewart Title argued, in part, that issue preclusion barred the tax claims because DCBS had previously and unsuccessfully brought those same claims against Stewart Title for tax years 1997 and 1998. The trial court granted summary judgment to Stewart Title based on issue preclusion. DCBS appeals, assigning error to the court's judgment. "We review for legal error the question whether the evidence was sufficient to establish the necessary requisites for the doctrine to apply." *City of Portland v. Huffman,* 264 Or App 312, 315, 331 P3d 1105 (2014). We affirm.

The facts are undisputed and predominantly procedural. In a prior case, DCBS filed a complaint in 1999, seeking to recover "retaliatory taxes" and "transition taxes" from Stewart Title, a corporation domiciled in Texas, for the 1997 and 1998 tax years. Central to the dispute was the interpretation and application of ORS 731.854(1).[1]

---

[1] In 2003, ORS 731.854(1) was amended to replace the term "agents" with "insurance producers." For consistency and readability, throughout this opinion we refer to the statute as it appeared at the time of the first proceeding, prior to the amendment. That statute provided, in part:

"(1) When by or pursuant to the laws of any other state or foreign country any taxes licenses and other fees, in the aggregate, and any fines, penalties, deposit requirements or other material obligations, prohibitions or restrictions are or would be imposed upon insurers domiciled in this state, or upon the agents or representatives of such insurers, which are in excess of such taxes, licenses, and other fees, in the aggregate, or which are in excess of the fines, penalties, deposit requirements or other obligations, prohibitions, or restrictions directly imposed upon similar insurers, or upon the agents or representatives of such insurers, of such other state or country under the statutes of this state, so long as such laws of such other state or country continue in force or are so applied, the same taxes, licenses and other fees, in the aggregate, or fines, penalties or deposit requirements or other material obligations, prohibitions, or restrictions of whatever kind shall be imposed by the Director of the Department of Consumer and Business Services upon the insurers, or upon the agents or representatives of such insurers, of such other state or country doing business or seeking to do business in this state. Any tax, license or other fee or other obligation imposed by any city, county, or other political subdivision or agency of such other state or country on insurers

DCBS alleged that Stewart Title was a "foreign" insurer, as defined in ORS 731.082(2), and that, pursuant to ORS 731.854(1), it owed retaliatory taxes for premiums collected and retained by its Oregon-based insurance agents. ORS 731.859 (applying retaliatory provisions to foreign insurers). DCBS alleged that Stewart Title "failed and refused to pay the taxes, interest, and penalties due" for those years.

DCBS and Stewart Title filed cross-motions for summary judgment. Stewart Title argued, in part, that DCBS erred by imposing a retaliatory tax based on the mistaken impression that Texas law imposes a premium tax on title insurers. Under a correct interpretation of Texas law and ORS 731.854, Stewart Title believed it did not owe a retaliatory tax.

The trial court rejected the department's statutory interpretation in a letter opinion. It concluded, in part, that the department's "interpretation of ORS 731.854 * * * is simply incorrect. Nothing in that statute authorizes the state to look to an insurer for any sums which might be due on behalf of the insurer's agents. * * * Moreover, nothing in the legislative history suggests a contrary result." The trial court entered a judgment dismissing the DCBS complaint with prejudice in 2001. DCBS moved to set aside the judgment, and the trial court denied the motion in 2002.[2] DCBS did not appeal the judgment in that case.

In 2010, DCBS sought to assess retaliatory taxes from Stewart Title for the 2009 and 2010 tax years. Stewart Title filed a declaratory relief action again, now contending that issue preclusion barred DCBS from seeking retaliatory taxes. DCBS filed counterclaims for the retaliatory taxes in the more recent years through June 30, 2011. Stewart Title and DCBS again filed cross-motions for summary judgment. DCBS disputed that issue preclusion barred the department's renewed attempt to assess taxes, now for 2009, 2010, and 2011. DCBS argued that "[r]etaliatory taxes, like income taxes and property taxes, are filed and assessed

---

domiciled in this state or their agents or representatives shall be deemed to be imposed by such state or country within the meaning of this subsection."

[2] The trial court concluded that it found "no justification" for granting the department's motion for relief.

each year," and, as a result, "each tax year gives rise to a new cause of action." DCBS also argued that the legal landscape had changed since its first case against Stewart Title. The department contended that the applicable Texas law had been amended in 2007, and retaliatory tax revenues had become "a much more substantial part of Oregon's total insurance tax revenues" in those intermediate years.

The trial court denied DCBS's motion and ruled that issue preclusion barred DCBS from relitigating whether ORS 731.854(1) required Stewart Title to pay retaliatory taxes for premiums maintained by its agents in Oregon. The court entered a judgment in favor of Stewart Title. On appeal, DCBS assigns error to the trial court's ruling and reasserts that issue preclusion does not bar its claims for the 2009, 2010, and 2011 tax years. Stewart Title responds that the trial court did not err in applying issue preclusion to this case. With the latter view, we agree.[3]

"Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993). That is to say that, "[i]f a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment." *North Clackamas School Dist. v. White*, 305 Or 48, 53, 750 P2d 485, *modified on other grounds*, 305 Or 468, 752 P2d 1210 (1988). "[I]ssue preclusion can apply equally to issues of fact and issues of law." *Evangelical Lutheran Good Samaritan Soc. v. Bonham*, 176 Or App 490, 498, 32 P3d 899 (2001), *rev den*, 334 Or 75 (2002).

> "The doctrine of judicial finality, of which [issue preclusion] is a part, is based upon two considerations. First, the protection of private litigants against the harassing necessity of litigating more than once the same issue or cause of action; and, second, the protection of the public's interest in preventing relitigation of matters once decided."

---

[3] Because we affirm on the basis of issue preclusion, we do not address the department's contention that the trial court erred by failing to correctly construe ORS 731.854(1).

*Bahler v. Fletcher*, 257 Or 1, 6, 474 P2d 329 (1970) (footnote omitted).

We address the arguments on appeal within the common-law framework. *See Huffman*, 264 Or App at 315.

"If one tribunal has decided an issue, the decision of that issue may preclude relitigation of the issue in another proceeding if five requirements are met:

"1.   The issue in the two proceedings is identical.

"2.   The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3.   The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4.   The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5.   The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Nelson*, 318 Or at 104 (internal citations omitted). "The party asserting issue preclusion bears the burden of proof on the first, second, and fourth requirements, whereupon the burden shifts to the party against whom preclusion is asserted to show that the third and fifth requirements are not met." *Thomas v. U. S. Bank National Association*, 244 Or App 457, 469, 260 P3d 711, *rev den*, 351 Or 401 (2011). Where we have determined that those elements have been satisfied, we must also "consider the fairness under all the circumstances of precluding a party." *State Farm v. Century Home*, 275 Or 97, 110, 550 P2d 1185 (1976).

Regardless who bore the burden on which requirement, DCBS contends that two of the five requirements— identical issues in the proceedings and full and fair opportunity to litigate—are not satisfied in this case. DCBS adds a third contention that, even if all of the requirements are met here, "the circumstances in this case warrant an exception to the application of issue preclusion[.]" We address each of these three arguments in turn.

First, we cannot agree that the issues in the two proceedings were not identical. DCBS argues that, because

"[e]ach tax year stands on its own as a separate cause or demand[,]" the tax assessments for 2009 through 2011 constitute qualitatively different claims. It is true that in the context of *claim* preclusion, "[i]t has long been held in Oregon tax cases that each tax year stands alone; thus, each tax year is its own cause of action." *Safley v. Jackson County Assessor*, TC-MD 091206C, WL 4923355 at *5 (Dec 2, 2010). The mere fact that there are separate tax years, however, does not determine whether *issue* preclusion properly applies. *See id.* at *5-*6 (concluding issues were not identical because the law had changed and rule was not in effect until after first proceeding).

For example, in *Fisher Broadcasting v. Dept. of Rev.*, 321 Or 341, 343, 898 P2d 1333 (1995), the taxpayer brought an action "to obtain refunds of its Oregon corporate excise tax and Multnomah County business tax for the years 1983 and 1984." The Supreme Court considered whether the Tax Court erred in ruling that the taxpayer was not entitled to the benefit of issue preclusion. *Id.* at 346. In deciding whether the issues in two proceedings were identical, the court concluded that they were "not identical, because the underlying facts relevant to the determination of *taxpayer's status* in those different years are not the same." *Id.* at 347 (emphasis added). The mere fact, however, that the claims related to two separate tax years did not determine the court's conclusion. The distinction was the issue presented in each case; the year was not the distinction.

DCBS also argues that, because a "transition tax," which had been in effect at the time of the earlier proceeding, has been since phased out, there has been a change in the "legal context" in which the litigation took place, such that the issues are no longer identical. DCBS elaborates, saying that there was "an interdependent calculation [based on both taxes] rather than the stand-alone retaliatory tax determination at issue in the present case." DCBS notes that, at the time of the prior proceeding, DCBS had also sought to assess a transition tax. That former tax had been authorized only for a five-year period, from 1997 to 2001, and was thus not in effect during the 2009, 2010, and 2011 tax years. *See* Or Laws 1995, ch 786, §§ 2, 3.

We are not persuaded that the issues are not identical due to the "sunsetting" of the transition tax by the time of the subsequent proceeding. The end of the transition tax is not a change in the legal context for purposes of issue preclusion. The end of the transition tax, and the financial consequences, were not unexpected at the time of the first proceeding. DCBS knew that the transition tax was impermanent because the transition tax had been authorized only until 2001. Whatever the interdependent calculation on the tax numbers, the end of the transition tax did not change the legal question as to the retaliatory tax then or now. At the time of the first proceeding, DCBS alleged that under ORS 731.854, Stewart Title, as a "foreign insurer," was "required to report and pay to DCBS certain retaliatory * * * taxes[,]" that Stewart Title was liable for those taxes, and that Stewart Title "failed and refused to pay the taxes, interest, and penalties due." That issue was the identical legal issue later appearing in this case in the DCBS cross-motion for summary judgment, when DCBS argued that "[u]nder a proper construction of ORS 731.854, Stewart Title underreported its retaliatory tax, which DCBS * * * properly adjusted to include the total tax paid on premium in Texas" and that "Stewart Title is liable for the amount of retaliatory tax as set forth" in DCBS's counterclaim. Given what was litigated, we conclude that the ultimate issue presented in this case—whether Stewart Title is subject to retaliatory taxes under ORS 731.854(1) for premiums maintained by Stewart Title's Oregon agents—is identical to the issue presented in the earlier proceeding.

Second, we cannot agree that DCBS lacked a full and fair opportunity to contest the issue in the earlier proceeding. The department bore the burden of showing that. What the department argued was instead that it lacked "a full and fair opportunity and incentive * * * to litigate *an appeal* of that [2001] decision." (Emphasis added.) The argument does not meet the department's burden.

DCBS had a full and fair opportunity, and the incentive, to litigate the dispute in the Oregon court system. After unfettered litigation, the trial court concluded, in 2001, that a correct interpretation of ORS 731.854 and the

applicable Texas law compelled the conclusion that Stewart Title did not owe a retaliatory tax. The trial court entered a judgment dismissing the claim. Exercising its right, DCBS moved to set aside the judgment, and, after consideration, the trial court denied the motion.

DCBS concedes that it chose not to appeal. The department cites strategic and pragmatic reasons for its choice.[4] The department's choice, however, assured that a final judgment remained a final judgment. Nothing hampered the department's ability to fully present its case in the trial court, and there is nothing qualitatively inferior about the final judgment of the trial court. It was only the department's own assessment of the circumstances that prevented further judicial proceedings. The fact that the department, for whatever reasons, chose not to further litigate does not mean that the department lacked incentive to have litigated the issue or that the system deprived the department of a full and fair opportunity to litigate. The fact that the department chose to accept the finality of the trial court's judgment, rather than appeal, does not diminish the finality of that judgment for purposes of issue preclusion in a later proceeding. A disappointed litigant, by choosing not to appeal, cannot claim that proceedings were thus limited, then return to relitigate the same issue again. Here, DCBS "had a 'full and fair opportunity to be heard' but did not take advantage of that opportunity." *Hunt v. City of Eugene*, 249 Or App 410, 429, 278 P3d 70, *rev den*, 353 Or 103 (2012).

Finally, we cannot agree with DCBS that, in considering all the circumstances, issue preclusion somehow should not apply. There are no circumstances in this case that "severely undermine" our confidence in the integrity of the preclusion determination, nor circumstances indicating that "the result would likely be different in a second trial." *State Farm*, 275 Or at 108; *Minihan v. Stiglich*, 258 Or App

---

[4] In its cross-motion for summary judgment, DCBS similarly conceded that it "decided not to appeal the 1999 case decision to the Court of Appeals." DCBS explained that, first, the risk of an adverse appellate ruling as to the transition tax issue outweighed the potential benefits of appealing the judgment and that, second, at the time, Stewart Title "had begun writing nearly all Oregon title insurance through STICO, [an] Oregon subsidiary," thereby avoiding a retaliatory tax issue.

839, 859-60, 311 P3d 922 (2013). This case does not present circumstances involving a verdict that was the apparent result of a jury compromise, a trial court's determination that was "manifestly erroneous[,]" "newly discovered or crucial evidence that was not available to the litigant at the first trial * * * [and] would have a significant effect on the outcome[,]" or "extant determinations that are inconsistent on the matter in issue," such that applying issue preclusion would amount to an injustice. *State Farm*, 275 Or at 108, 110.

The ultimate issue of whether Stewart Title was required to report and pay retaliatory taxes for premiums maintained by its Oregon agents was raised, litigated, and decided in proceedings between 1999 and 2001. In 2011, issue preclusion barred DCBS from relitigating that issue. The trial court did not err.

Affirmed.