TOOKEY, J.
*772 *371 Defendant appeals a judgment of conviction for second-degree theft, ORS 164.045. As part of his sentence, the trial court ordered defendant to pay the victim, his former employer, restitution in the amount of $25,176.56 for economic damages caused by defendant's theft of the victim's metal. The $25,176.56 of restitution imposed represented the $37,676.56 in economic damages that the state had established that defendant had caused to the victim by stealing the metal, less a total of $12,500 comprised of (1) $10,000 that the trial court found was precluded by a prior small claims action that the victim had brought against defendant, which resulted in a $2,500 judgment in favor of the victim, and (2) $2,500 that defendant had paid to the victim to satisfy the small claims judgment.
On appeal, defendant assigns error to the trial court's imposition of restitution, arguing that the court should have concluded that issues decided in the small claims action, or the judgment resulting from the small claims action, rendered it without authority to impose any restitution for the metal that defendant stole. For the reasons that follow, we conclude that the trial court did not err when it concluded that the small claims action did not render it without authority to impose any restitution against defendant. Accordingly, we affirm.
We begin by stating the facts in the light most favorable to the state. State v. McClelland , 278 Or. App. 138, 139, 372 P.3d 614, rev. den. , 360 Or. 423, 383 P.3d 862 (2016) (applying that standard in considering challenge to award of restitution). The victim in this case is a company that principally manufactures bath and kitchen products. Defendant ran the victim's foundry. Between July 2012 and December 2013, defendant, for his own benefit, manufactured products using the victim's foundry, production resources, and, importantly here, metal. Defendant's employment was terminated in December 2013 after the victim learned of the theft.
In October 2014, the victim instituted a small claims action against defendant seeking to recover $10,000 in damages-the statutory cap for damages in small claims *372 actions-for defendant's "unapproved use of [the victim's] foundry, equipment, gas, labor, and metal." See ORS 46.405(3) (stating the small claims cap). At the hearing in the small claims action, defendant admitted to using the victim's foundry and gas but denied using its metal. He testified that he had "cancelled checks and invoices" reflecting his own purchases of metal and that he had given that information to detectives. As a result, the judge presiding over the small claims action expressed "concern" that the victim had not proven its case:
"I'm most concerned about-he says he's got his own metal that he used. That's a big chunk of what you're asking for, and I haven't really heard proof that it was [he who] took this metal. There's metal missing: You've said that; but you haven't really tied it to him yet."
A witness for the victim responded that she could not "really tie it to" defendant.
The small claims court ultimately determined that, although defendant "probably did" steal the victim's metal, the victim had not met its burden of proof as to the metal theft:
"I don't find that you've met your burden on the aluminum. It seems fishy; he probably did it; I don't know. He admitted to using the shop and the gas, and he owes you for that.
"The numbers are almost impossible to figure out, because he was doing it after hours and you didn't really know what was going on, so the number that I'm going to give is somewhat arbitrary. I'm going to put it at 25 percent of your claim, which is twenty-five hundred bucks. That's what I think you've proven. I can't go any further."[1]
*773 The small claims court went on to note, however, that, if there was a criminal case, the victim would be made whole via restitution:
"I will say this: Any criminal case, restitution's going [to be] ordered through the Court. You'll be made whole. If *373 he actually did it and they can prove it, you're going to get your money at some point anyway."
After the conclusion of the small claims action, defendant paid the victim $2,500 to satisfy the resulting judgment.
Defendant was subsequently indicted for three counts of aggravated first-degree theft, ORS 164.057, relating to three separate time periods. Each count alleged that defendant "did unlawfully and knowingly commit theft of property of the total value of $10,000 or more, the property of [the victim]." See ORS 164.057(1)(b) (aggravated first-degree theft requires that "the value of the property in a single or aggregate transaction is $10,000 or more"). Defendant pleaded no contest to the lesser-included offense of second-degree theft, ORS 164.045, on Count 1. Defendant also admitted to the conduct charged in Count 2 and Count 3 "for the purposes of ordering restitution." The trial court accepted defendant's admission and no contest plea. The state explained to the trial court during the restitution hearing that the charges in the indictment were "based on" the victim's "loss of * * * metals."
Following defendant's plea and admission, the state, as it was required to do under ORS 137.106(1)(a), presented evidence to the trial court regarding the amount of the victim's economic damages. That evidence included testimony from the victim's office manager, as well as a spreadsheet that the office manager created at the request of law enforcement, reflecting that over $37,000 worth of metal had disappeared from the victim's foundry during the time periods covered by the indictment. The state ultimately requested that the trial court impose $37,676.56 in restitution for defendant's "unauthorized use of metals." Despite his admission to the conduct alleged in Count 2 and Count 3 for the purposes of ordering restitution and his no contest plea to the lesser-included offense of second-degree theft, defendant, for his part, again testified that he did not steal metal from the victim. He submitted into evidence copies of checks and invoices purporting to reflect that he had purchased his own aluminum during the time periods covered by the indictment and argued that "the [s]tate[ ] * * * or the victims [were] * * * collaterally [estopped] from seeking full *374 restitution" from the trial court for the metal theft given the prior small claims action.
The trial court found that the victim's office manager was "credible" and that "everything she outlined, as far as how she came up with the figures, made sense." In contrast, the trial court did not credit defendant's testimony, finding instead that "it definitely sounds like there was theft going on." It also noted, with respect to the checks defendant submitted into evidence, that those "made it look like [defendant] was trying to kind of mix a little bit of credibility * * * to kind of cover * * * some of the other stuff that he was doing." The trial court ultimately held that "the [s]mall [c]laims action does * * * provide issue preclusion for $10,000," the maximum amount of damages that could be awarded in that action. Additionally, it reduced the restitution that it awarded by $2,500-the amount that defendant had already paid to the victim. Consequently, the trial court imposed restitution in the amount of $25,176.56, reflecting the $37,676.56 in economic damages that the state had established that defendant had caused to the victim by stealing the metal, less the $10,000 that it held was precluded by the small claims action and the $2,500 that the victim had already received for defendant's use of the victim's "shop and * * * gas." The trial court noted that it thought the plea offer was "exceptionally light," but that it would "go along with the plea offer" because it was ordering "that much restitution."
On appeal, defendant argues that the trial court erred "in failing to hold that the small claims judgment precludes any restitution for the metal" in the criminal case. (Emphasis in defendant's brief.) Defendant contends that, pursuant to the Supreme Court's decision in State v. Ramos , 358 Or. 581, 368 P.3d 446 (2016), courts must apply certain "civil *774 concepts" to restitution proceedings.[2] Defendant *375 maintains that common-law issue preclusion and claim preclusion, as well as what defendant characterizes as "statutory preclusion rules"-viz. , ORS 43.130(2), ORS 43.160, and ORS 46.485(4) -are such concepts. According to defendant, because those doctrines and statutes would bar the victim from obtaining an award of damages in a subsequent civil action for defendant's theft of metal, the trial court lacked authority to award any restitution to the victim here. Defendant requests that we "reverse the restitution award."
The state argues, among other points, that issue preclusion would not preclude a civil action by the victim because "preclusion would be unfair under the circumstances of this case." The state requests that we "affirm the trial court's restitution order."[3]
"We review the trial court's legal conclusion with respect to its authority to award restitution for errors of law, and we are bound by the court's findings of fact if there is evidence in the record to support them." State v. Carson , 238 Or. App. 188, 191, 243 P.3d 73 (2010) (internal citation omitted).
I. ISSUE PRECLUSION
We turn first to issue preclusion. "Issue preclusion prevents parties from relitigating issues that were actually *376 litigated and determined in a prior action." State ex rel. English v. Multnomah County , 348 Or. 417, 431, 238 P.3d 980 (2010). "Issue preclusion can be based on the constitution, common law, or a statute." Fisher Broadcasting, Inc. v. Dept. of Rev. , 321 Or. 341, 347, 898 P.2d 1333 (1995). In this case, defendant, as we understand his argument, relies on both statutory and common-law issue preclusion.
A. Statutory Issue Preclusion
With respect to statutory issue preclusion, defendant cites ORS 43.130(2), ORS 43.160, and ORS 46.485(4). See ORS 43.130(2) (providing that a judgment "is, in respect to the matter directly determined, conclusive between the parties, their representatives and their successors in interest by title subsequent to the commencement of the action * * *, litigating for the same thing, under the same title and in the same capacity"); ORS 43.160 (providing "[t]hat only is determined by a former judgment, * * * which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto"); ORS 46.485(4) (providing that "[a] judgment in the small claims department is conclusive upon the parties and no appeal may be taken from the judgment"). The difficulty with defendant's reliance on those statutes is that he fails to *775 develop any cogent, much less persuasive, argument as to how and why those statutes apply to the facts of this case, or, importantly here, how the criteria necessary for the "statutory preclusion rules" to apply differs from the criteria necessary for common-law issue preclusion to apply. Rather, defendant's only assertion regarding the applicability of those statutes is that, "[i]f [the victim] had brought a subsequent civil action against defendant, th[o]se statutes would have barred it from relitigating the issue of damages relating to the metal because the issue of whether defendant used [the victim's] metal (or supplied his own) was actually and necessarily decided in the earlier small claims court action [the victim] brought against defendant." That conclusory sentence, coupled with citations to ORS 43.130(2), ORS 43.160, and ORS 46.485(4), is an insufficient basis on which to reverse the trial court's restitution award. As we have observed, it is not this court's proper function to *377 make or develop a party's argument when that party has not endeavored to do so itself. Beall Transport Equipment Co. v. Southern Pacific , 186 Or. App. 696, 700-01 n. 2, 64 P.3d 1193, adh'd to on recons. , 187 Or. App. 472, 68 P.3d 259 (2003).
We note that defendant also asserts, without analysis or elaboration, that under ORS 46.485(4), a small claims judgment is the type of judgment to which courts must give preclusive effect. As mentioned above, ORS 46.485(4) provides that "[a] judgment in the small claims department is conclusive upon the parties and no appeal may be taken from the judgment." But "[c]onclusive upon the parties," as that phrase is used in ORS 46.485(4), has "always been interpreted to mean that small claims decisions may not be appealed." Written Testimony, Senate Committee on the Judiciary, S.B. 395, Feb. 1, 1991, Ex. C at 3-4 (statement of William Linden, State Court Administrator) (noting the 1991 amendment to ORS 46.485(4), which added "and no appeal may be taken from the judgment" to the statutory text, was "suggested simply as a clarification"). Consequently, we reject defendant's argument that statutory issue preclusion rendered the trial court in this case without authority to impose any restitution against defendant.
B. Common-Law Issue Preclusion
With respect to common-law issue preclusion, in Nelson v. Emerald People's Utility Dist. , 318 Or. 99, 104, 862 P.2d 1293 (1993), the Supreme Court identified the following five requirements for common-law issue preclusion to preclude relitigation of an issue:
"1. The issue in the two proceedings is identical.
"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.
"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect."
(Internal citations omitted.)
*378 Additionally, "[e]ven where those elements are met, '[t]he court must also consider the fairness under all the circumstances of precluding a party.' " Minihan v. Stiglich , 258 Or. App. 839, 855, 311 P.3d 922 (2013) (quoting State Farm v. Century Home , 275 Or. 97, 110, 550 P.2d 1185 (1976) (second brackets in Minihan ) ); see also Stewart Title Guaranty Co. v. DCBS , 272 Or. App. 138, 143, 354 P.3d 744 (2015) (recognizing that courts must "consider the fairness under all the circumstances of precluding a party" even when the Nelson elements are satisfied (internal quotation marks omitted) ). In particular, if " 'the circumstances are such that our confidence in the integrity of the [first] determination is severely undermined, or that the result would likely be different in a second trial, it would work an injustice to deny the litigant another chance.' " Hancock v. Pioneer Asphalt, Inc. , 276 Or. App. 875, 881, 369 P.3d 1188 (2016) (quoting City of Portland v. Huffman , 264 Or. App. 312, 316, 331 P.3d 1105 (2014) ). Examples of such circumstances are "a trial court's determination that was 'manifestly erroneous[,]' 'newly discovered or crucial evidence that was not available to the litigant at the first trial * * * [and] would have a significant effect on the *776 outcome[,]' or 'extant determinations that are inconsistent on the matter in issue.' " Stewart Title Guaranty Co. , 272 Or. App. at 146-47, 354 P.3d 744 (quoting State Farm , 275 Or. at 108, 110, 550 P.2d 1185 (brackets and omission in Stewart Title Guaranty Co. ) ).
Additionally, we have recognized that "[t]he availability of a review for correction of error is a critical factor in the application of collateral estoppel or issue preclusion" because
" '[t]he estoppel doctrine * * * is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted.' "
Universal Ideas Corp. v. Esty , 68 Or. App. 276, 281-82, 681 P.2d 1176, rev. den. , 297 Or. 546, 685 P.2d 997 (1984) (quoting Standefer v. United States , 447 U.S. 10, 23 n. 18, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) ); see also State Farm , 275 Or. at 107, 550 P.2d 1185 ("The deference we lend to prior adjudications is based on our reason-able confidence as to their correctness * * *."). Consequently, for *379 issue preclusion to apply, "there must have been an opportunity to appeal" the earlier determination. Universal Ideas Corp. , 68 Or. App. at 282, 681 P.2d 1176 ; see also Restatement (Second) of Judgments § 28 (1982) (providing that "relitigation of [an] issue in a subsequent action between the parties is not precluded" when the "party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action").
Defendant points to State v. Thompson , 138 Or. App. 247, 908 P.2d 329 (1995) to support his argument that issue preclusion can operate to limit a trial court's authority to impose restitution in a criminal case. Our decision in Thompson concerned a defendant who, after sustaining an injury suffered in the course of her employment, filed a claim for and received, workers' compensation benefits. Id. at 249, 908 P.2d 329. An investigation by the workers' compensation insurer, SAIF, revealed that, while the defendant was receiving benefits, she had "earned wages from another employer and was operating her own business while receiving time loss benefits." Id . Subsequently, the Hearings Division of the Workers' Compensation Board (board) held a hearing "regarding several issues involving [the] defendant's workers' compensation claim," at which SAIF contended that the amount of its overpayment was $7,785. Id. The referee determined that the amount of the overpayment was $1,941 and ordered that that amount be offset from the defendant's other benefits. Id. SAIF did not appeal. Id.
The defendant was then indicted for, and pled guilty to, first-degree theft, admitting that she had "received SAIF benefits while employed." Id. At the restitution hearing, the defendant argued that "there should be no order of restitution" because "the amount of restitution had already been resolved at the workers' compensation hearing, [and] that that amount had been offset against her benefits." Id. at 249-50, 908 P.2d 329. The state, for its part, presented evidence that the defendant had been overpaid by $7,785. Id. at 250, 908 P.2d 329. The trial court "found $7,783 to be the correct restitution amount less the $1,941 already credited to [the] defendant." Id.
The defendant appealed and we reversed, framing the issue before us as whether the "legislature intended *380 under the criminal restitution statutes to limit the amount of restitution awarded to the amount of pecuniary loss determined in the previous administrative hearing." Id . at 252, 908 P.2d 329. We determined that it did, noting that, under the doctrine of issue preclusion, "[i]f the insurer were seeking recovery from the defendant for the overpayment of the benefits in a civil proceeding, it would not be entitled to judgment against defendant" because "the amount claimed by the insurer had been litigated and adjudicated in the administrative hearing, and defendant [had] paid that obligation." Id. at 253, 908 P.2d 329. We concluded that, "because there could be no successful civil recovery by the victim, the trial court was without authority to make the award," and that it was "unclear to us how requiring defendant to pay an amount that it has been determined that she does not owe serves the policies of rehabilitation and deterrence *777 expressed by ORS 137.106." Id. at 254, 908 P.2d 329.
Defendant's reliance on Thompson is misplaced, however. Given the circumstances of this case, we conclude that issue preclusion does not prevent recovery by the victim for defendant's theft of metal. For the reasons explained below, we conclude that it would be unfair to apply issue preclusion to preclude relitigation at a restitution hearing of the issue of whether defendant stole the victim's metal.
First, in Thompson , the determination of the defendant's liability for receiving an overpayment of benefits was consistent in the board hearing and the criminal case; the only issue relitigated at the restitution hearing was the amount of the overpayment. Here, as a result of defendant taking inconsistent positions in the small claims action and the criminal action, at the time of the restitution hearing, there were, in effect, inconsistent "extant determinations" regarding defendant's criminal conduct-i.e. , whether defendant stole the victim's metal. In particular, in the small claims action, defendant denied that he stole any metal from the victim. As a result, the small claims court awarded the victim no damages for defendant's metal theft-notwithstanding the small claims court's observation that defendant "probably did it." Subsequently, in the criminal case, defendant admitted to the conduct charged in Count 2 *381 and Count 3 of the indictment "for purposes [of] restitution." Those counts were based on the victim's loss of metal and alleged that defendant had committed theft from the victim of property valued at over $20,000. See ORS 164.057 (1)(b). Defendant's admission in the criminal case to the theft of property valued at over $20,000 from the victim was an unequivocal one, such that defendant would be "preclude[d] * * * from contesting [his] guilt" for that conduct "at a later time." State v. Thorpe , 217 Or. App. 301, 306, 175 P.3d 993 (2007). As the Supreme Court has noted, in the context of issue preclusion, "we are not free to disregard incongruous results when they are looking us in the eye." State Farm , 275 Or. at 108, 111, 550 P.2d 1185 (noting that, in determining whether "extant determinations" are inconsistent, "[w]e do not give much weight to variations in the wording of the pleadings * * * where essentially the same acts and omissions are alleged"); see also Johnson v. Babcock , 238 Or. App. 513, 522, 243 P.3d 120 (2010), rev. den. , 349 Or. 602, 249 P.3d 123 (2011) (concluding that it would be "fundamentally unfair" to apply issue preclusion given the "existence of inconsistent decisions on [an] issue").
Second, in Thompson , although SAIF did not appeal, it did have the opportunity to appeal the board's decision. 138 Or. App. at 249, 908 P.2d 329 ; ORS 656.298(1) (1993) (providing for judicial review of board orders by the Court of Appeals). In this case, the victim had no opportunity to seek review for correction of any errors that occurred in the small claims action because, by statute, "no appeal may be taken from [a] judgment" rendered in the small claims department. ORS 46.485(4). As a result, the victim in this case could not have sought review of the earlier determination and, because that "critical factor" is absent, our "confidence that the result achieved in the initial litigation was substantially correct * * * is * * * unwarranted." Universal Ideas Corp ., 68 Or. App. at 281-82, 681 P.2d 1176 (internal quotation marks omitted). For that reason, too, it would be unfair to preclude relitigation of the small claims court's determination that defendant did not steal the victim's metal.
Third and finally, we note that "the theory behind restitution ultimately is 'penological: It is intended to serve a rehabilitative and deterrent purpose by causing a defendant *382 to appreciate the relationship between his criminal activity and the damage suffered by the victim.' " State v. N. R. L. , 354 Or. 222, 226, 311 P.3d 510 (2013) (quoting State v. Hart , 299 Or. 128, 138, 699 P.2d 1113 (1985) ). In Thompson , the defendant had completely compensated SAIF for the economic damages that were caused by the defendant's criminal conduct, as adjudicated by the board, and, accordingly, we observed that it was "unclear to us how requiring [the] defendant to pay an amount that it has been determined that she does not owe serves the policies of rehabilitation and deterrence expressed by ORS 137.106." *778 138 Or. App. at 254, 908 P.2d 329. In this case, at the time of the restitution hearing, defendant had not compensated the victim for any of its economic damages caused by defendant's metal theft. It is unclear to us how accepting defendant's argument in this case and concluding that the trial court was without authority to award any restitution-which would result in a large wind-fall to defendant-would serve the policies of rehabilitation and deterrence that underlie ORS 137.106 and are meant to cause defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim.
Thus, we conclude that it would be unfair to apply issue preclusion to preclude relitigation at the restitution hearing of the issue of whether defendant stole the victim's metal. Consequently, we reject defendant's argument that common-law issue preclusion rendered the trial court in this case without authority to impose any restitution against defendant.
II. CLAIM PRECLUSION
We next turn to claim preclusion. The Supreme Court has described claim preclusion as follows:
" '[A] plaintiff who has prosecuted one action against a defendant through to a final judgment * * * is barred [i.e. , precluded] * * * from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.' "
*383 Drews v. EBI Companies , 310 Or. 134, 140, 795 P.2d 531 (1990) (quoting Rennie v. Freeway Transport , 294 Or. 319, 323, 656 P.2d 919 (1982) (brackets and omissions in Drews ) ).
"[T]he doctrine of claim preclusion can be separated into two concepts: the rule of merger and the rule of bar." English , 348 Or. at 431, 238 P.3d 980. Under the rule of merger, "once a plaintiff obtains a valid, final judgment, the plaintiff's underlying claim merges into the final judgment and is extinguished. For that reason, the plaintiff can no longer maintain an action on the underlying claim."[4] Id. at 432, 238 P.3d 980. The "rule of bar," in contrast, "prohibits parties from splitting claims by requiring plaintiffs to bring all claims arising from the same factual transaction or circumstances in a single action." Id. (internal quotation marks omitted).
Here, as we understand defendant's position, his contention is that, because the rule of merger and the rule of bar would preclude civil recovery by the victim for defendant's theft of metal, the trial court lacked authority to award any restitution in this case.
Defendant's position is inconsistent with our prior case law analyzing the effect of a prior civil suit on the state's ability to seek and obtain restitution in a criminal proceeding. In State v. Hull , 68 Or. App. 817, 820, 683 P.2d 157, rev. den. , 298 Or. 37, 688 P.2d 845 (1984), the defendant "argue[d] that [an] order to pay restitution * * * [was] improper, because the [victim] ha[d] obtained a civil judgment against him for its losses." We disagreed, noting that "[r]estitution is not a form of civil recovery." Id. We concluded that the proper procedure when a crime victim has obtained a civil judgment prior to a restitution proceeding is that, "[i]f defendant makes restitution for the loss covered by the civil judgment, 'the court shall credit any restitution paid by the defendant to a victim against any judgment in favor of the victim in such civil action.' "[5] Id. (quoting ORS 137.109(1) ).
*384 That is, notwithstanding that *779 claim preclusion would have likely precluded a subsequent civil action by the victim in Hull , we concluded that the state was entitled to seek, and the trial court was authorized to impose, restitution on the defendant, as long as the process for crediting payments provided for by ORS 137.109(1) was followed. In Thompson , we reaffirmed the conclusion that we reached in Hull , again recognizing "that a trial court may order restitution even after a civil judgment has been entered so long as the defendant is credited for amounts previously paid." 138 Or. App. at 254 n. 3, 908 P.2d 329.
Defendant does not argue that Hull and Thompson are no longer good law, nor does he develop any argument that the legislature intended for claim preclusion, as a "civil concept," to prevent a trial court from imposing restitution when claim preclusion would preclude civil recovery by a crime victim. Consequently, we reject defendant's argument that claim preclusion rendered the trial court in this case without authority to impose any restitution against defendant.
III. CONCLUSION
In light of our analysis above, we conclude that the trial court did not err when it concluded that the small claims action did not render it without authority to impose any restitution against defendant. Consequently, we affirm.
Affirmed.

Though the small claims court specifically mentioned aluminum in its ruling, the parties agree that the small claims court's determination regarding the victim's failure to meet its burden encompassed aluminum as well as other types of metal.

ORS 137.106 provides, in part:
"(1)(a) When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court, * * * evidence of the nature and amount of the damages. * * * If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."
In Ramos , 358 Or. at 594, 368 P.3d 446, the court concluded that "the legislature's cross-reference to the definition of 'economic damages' applicable in civil actions, and the legislature's purpose in creating the restitution procedure as a substitute for a civil proceeding, make civil law concepts relevant to our interpretation of ORS 137.106." The court did not, however, conclude that trial courts, when imposing restitution, are obligated to apply every "civil concept" that could potentially preclude or diminish recovery in a civil action by the victim. See State v. Kirschner , 358 Or. 605, 608-10, 368 P.3d 21 (2016) (rejecting contention that because "under the American Rule, a party to a civil action may not recover the costs incurred in that action as damages, a victim in a criminal proceeding also may not be awarded such costs as restitution," where accepting that contention would "fail to recognize that restitution is a criminal sanction that is sought by the state, not by the victim"); State v. Gutierrez-Medina , 287 Or. App. 240, 241-42, 244, 246, 403 P.3d 462 (2017), rev. allowed , 362 Or. 389, 411 P.3d 380 (2018) (concluding Oregon's comparative fault scheme, ORS 31.600 to 31.620, "does not apply to the criminal restitution statute, ORS 137.106," in part because the procedure contemplated by ORS 137.106(1)"expressly forecloses the court from engaging in the type of apportionment of damages that comparative fault contemplates").

The state does not request any disposition other than affirmance.

While the rule of merger began as common law, ORS 43.130(2) now codifies it. English , 348 Or. at 432 n. 9, 238 P.3d 980.

ORS 137.109(1) provides:
"Nothing in ORS 137.103 to 137.109, 137.540, 144.102, 144.275, 161.675 and 161.685 limits or impairs the right of a person injured by a defendant's commission of a crime, * * * to sue and recover damages from the defendant in a civil action. Evidence that the defendant has paid or been ordered to pay restitution * * * may not be introduced in any civil action arising out of the facts or events that were the basis for the restitution. However, the court shall credit any restitution paid by the defendant to a victim against any judgment in favor of the victim in such civil action."