**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ANNETTE IRENE TOLLEY,<br>　　　　　　　Debtor. | BAP No. OR-21-1129-SLB<br><br>Bk. No. 3:20-bk-32467-DWH |
| ANNETTE IRENE TOLLEY,<br>　　　　　　　Appellant,<br>v.<br>JESS FITZHUGH,<br>　　　　　　　Appellee. | Adv. No. 3:20-ap-03112-DWH<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Oregon
David W. Hercher, Bankruptcy Judge, Presiding

Before: SPRAKER, LAFFERTY, and BRAND, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Judgment creditor Jess Fitzhugh filed a nondischargeability complaint against chapter 7[1] debtor Annette Irene Tolley under § 523(a)(2)(A). Shortly thereafter, Fitzhugh obtained summary judgment on his nondischargeability claim based on the issue preclusive effect of the $21,000 fraud judgment Fitzhugh had obtained against Tolley in Oregon state court.

Tolley argues that the bankruptcy court erred when it applied issue preclusion because it was unfair given the surrounding circumstances. She insists that, at a minimum, the bankruptcy court needed to hold an evidentiary hearing on the fairness issue. We disagree, so we AFFIRM.

## FACTS[2]

The litigation between the parties arose from a dispute regarding possession of four mules — Wyatt, Tater, Janet, and Adrian — as well as a horse named Big Sue. In March 2018, Fitzhugh unilaterally took possession of these five animals in partial payment of a loan he had made to John Wesley Gorbett. According to Fitzhugh, the debt was secured in part by three of the mules – Wyatt, Tater and Janet. In December 2018, Tolley, her

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

family's ranch known as Tolley Ranch and Cattle, LLC, and Gorbett sued Fitzhugh for conversion in the Wallowa County Circuit Court, alleging that he wrongfully seized and retained possession of the animals. According to the conversion plaintiffs, Wyatt, Tater, and Janet were owned by either Tolley or the ranch. Adrian and Big Sue allegedly were owned by a third party named Ralph Eyre. Apparently, the animals were being boarded at Gorbett's premises when Fitzhugh seized them in partial payment of the loan.

Fitzhugh counterclaimed against the conversion plaintiffs. He claimed that in 2016 Tolley, the ranch, and Gorbett acted in concert to induce him to loan Gorbett $55,000 on false pretenses.[3] According to Fitzhugh, Tolley and the ranch committed fraud by concealing from him that either she or the ranch claimed an ownership interest in Wyatt, Tater, and Janet. He claimed that Tolley and the ranch led him to believe that Gorbett owned the livestock, that the livestock was free of encumbrances, and that Gorbett was pledging the livestock to secure the loan. Tolley later claimed that she owned the livestock and that she had used it as collateral for a loan that she and her mother used to finance their purchase of cattle.

After a two-day jury trial, the jury returned a verdict against the plaintiffs on their conversion claim and in favor of Fitzhugh on his fraud

---

[3] Fitzhugh asserted, and recovered judgment, on additional claims against Tolley. But he limited his nondischargeability action to the $21,000.00 awarded on his fraud claim. Accordingly, we need not discuss or consider the additional amounts the jury awarded to Fitzhugh.

claims against Tolley and the ranch. The jury specifically found that both Tolley and the ranch committed fraud and that Fitzhugh suffered damages of $21,000 as a result. The Oregon court entered judgment in accordance with the jury's verdict. Tolley did not appeal the judgment or otherwise seek relief from it.

Tolley commenced her chapter 7 case, and Fitzhugh timely filed his nondischargeability complaint under § 523(a)(2)(A) against her. The § 523(a)(2)(A) claim largely mirrored Fitzhugh's state court fraud claim, but he also attached to the nondischargeability complaint the principal pleadings, jury verdict, and judgment rendered in the Oregon court.

In April 2021, Fitzhugh filed his motion for summary judgment.[4] He based his motion on the issue preclusive effect of the state court jury's fraud findings and the resulting judgment. In addition to relying on the documents attached to the nondischargeability complaint, Fitzhugh submitted the jury instructions used in the Oregon action. In relevant part, the jury was instructed that based on Gorbett's admission, they were to consider as conclusively established with respect to Gorbett only that: (1) Tolley gave him permission to pledge to Fitzhugh as collateral Wyatt and Tater; and (2) in May 2016, Tolley knew that some of the "horses" she alleges were owned by her were included in the "Collateral List." By "Collateral List," the jury instructions were referring to a listing of assets

---

[4] In the bankruptcy court, Tolley moved under Civil Rule 56(d) for deferral of the summary judgment proceedings so that she could conduct discovery. The bankruptcy

4

that was attached as Exhibit 1 to Fitzhugh's state court counterclaims. The Collateral List included several horses and several mules. Wyatt and Tater were listed but Janet was not. It also included a pickup truck, a trailer, and various items of tools and equipment.

Tolley opposed the summary judgment motion and included a declaration in which she detailed the reasons why she believed she did not have a full and fair opportunity to litigate in the state court. She also explained why she believed it would be unfair to give the judgment issue preclusive effect in the nondischargeability action. She maintained that she submitted sufficient evidence to raise a triable issue of fact regarding the full and fair opportunity and ultimate fairness questions. She claimed that a trial or evidentiary hearing was needed on these two issues. Tolley conceded, however, that apart from the full and fair opportunity and ultimate fairness questions the remaining issue preclusion elements were satisfied.

The bankruptcy court rejected Tolley's arguments and determined that Tolley had a full and fair opportunity to litigate, that applying issue preclusion to the Oregon judgment was not inequitable under the circumstances, and that no trial was necessary on these issues. On May 26, 2021, the bankruptcy court entered judgment against Tolley on Fitzhugh's § 523(a)(2)(A) claim for relief. Tolley timely appealed.

---

court denied that motion. On appeal, Tolley has not challenged that denial.

5

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Did the bankruptcy court commit reversible error when it gave issue preclusive effect to the Oregon state court fraud judgment?

2.     Was a trial or an evidentiary hearing necessary to resolve the full and fair opportunity issue or the ultimate fairness issue?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). We also review de novo the bankruptcy court's determination that issue preclusion is available. *Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 103 (9th Cir. BAP 2007). When we review a matter de novo, "we consider [the] matter anew, as if no decision had been rendered previously." *Kashikar v. Turnstile Cap. Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).[5]

---

[5] The Oregon Supreme Court has identified both the full and fair opportunity issue and the ultimate fairness issue as questions of law subject to de novo review on appeal. *State Farm Fire & Cas. Co. v. Century Home Components, Inc.*, 550 P.2d 1185, 1189 (Or. 1976) ("*Century Home*").

## DISCUSSION

### A. Federal summary judgment and issue preclusion standards.

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Civil Rule 56 (made applicable in adversary proceedings by Rule 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). For summary judgment purposes, material facts are those which may affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, substantive law determines which facts are material. *Id.* An issue is considered genuine and will bar entry of summary judgment if a reasonable factfinder could find in favor of the non-moving party. *Id.*; *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).

Civil Rule 56 requires courts to enter summary judgment if the non-moving party fails to present evidence in response to the summary judgment motion sufficient to support the existence of an essential element of that party's case, on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. If the party seeking summary judgment meets his initial burden, "the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (citing *Anderson*, 477 U.S. at 250).

Issue preclusion applies in exception to discharge actions. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). As required under 28 U.S.C. § 1738,

7

the Full Faith and Credit Act, we apply Oregon issue preclusion law to determine the issue preclusive effect of a final judgment rendered by a state court judge sitting in Oregon. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) ("the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued.").

**B.     Oregon issue preclusion standards.**

Under Oregon law, issue preclusion only will be applied when:

1. The issue in the two proceedings is identical.

2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

5. The prior proceeding was the type of proceeding to which preclusive effect applies.

*Nelson v. Emerald People's Util. Dist.*, 862 P.2d 1293, 1296-97 (Or.1993) (cleaned up). When these threshold considerations are satisfied, the court still must decide whether under the circumstances presented it would be unfair to preclude the adverse party from relitigating the issues in question. *Century Home.*, 550 P.2d at 1189.

Tolley conceded in the bankruptcy court all but the third issue preclusion element — the full and fair opportunity to litigate — and the ultimate fairness question. When as here it has been established that the identical issue was actually and necessarily decided in the prior action, the adverse party then bears the burden to establish either that she lacked a full and fair opportunity to litigate those issues in the prior action or that other circumstances would make it inequitable to preclude her from re-litigating those issues in the second action. *Id.*

"Whether a full and fair opportunity to be heard existed depends on whether the **forum** presented a full and fair opportunity to be heard, **not whether the party used their opportunity**." *Graham v. U.S. Bank, Nat'l Ass'n*, Case No. 3:15-CV-0990-AC, 2015 WL 10322087, at *8 (D. Or. Dec. 2, 2015), *report and recommendation adopted*, No. 3:15-CV-00990-AC, 2016 WL 393336 (D. Or. Feb. 1, 2016) (emphasis added) (citing *Barackman v. Anderson*, 109 P.3d 370, 373 (Or. 2005) ("*Barackman I*")); *see also Massey v. Knowles*, Case No. CV 05-921 PK, 2006 WL 2552797, at *5 n.1 (D. Or. Sept. 1, 2006) (stating that respondent Knowles had a full and fair opportunity to litigate the issues even though he deliberately chose not to defend himself).[6]

---

[6] Many Oregon courts have considered the adverse party's incentive to litigate in the first action as part of the full and fair opportunity test. *E.g.*, *Stewart Title Guar. Co. v. State ex rel. Dep't of Consumer & Bus. Servs.*, 354 P.3d 744, 749 (Or. App. 2015). However, the Oregon Supreme Court has held that the adverse party's incentive to litigate is not properly part of the full and fair opportunity test. *Barackman I*, 109 P.3d at 373. Rather, the adverse party's incentive is more properly considered as part of Oregon's fifth issue preclusion element — regarding whether the prior proceeding was of the type and

Thus, when a litigant's own decisions and conduct in the first action result in them being denied their day in court, their later full and fair opportunity argument will be rejected in a second action raising the same issues. *See Hunt v. City of Eugene*, 278 P.3d 70, 80-81 (Or. App. 2012).

Moreover, a disappointed litigant who chooses not to appeal after unsuccessfully litigating in the trial court typically cannot complain that she was deprived of a full and fair opportunity to litigate. *See Stewart Title Guar. Co. v. State ex rel. Dep't of Consumer & Bus. Servs.*, 354 P.3d 744, 749 (Or. App. 2015).

Oregon courts treat a formal judicial proceeding in another Oregon court as a presumptively "full and fair opportunity to be heard." *Graham*, 2015 WL 10322087, at *8. The adverse party can overcome that presumption by showing that under all the circumstances, it would be unfair to apply issue preclusion in that particular case. *Id.* at *9. This fairness test is one and the same with the ultimate fairness inquiry mandated by *Century Home*. *See Graham*, 2015 WL 10322087, at *9. (citing *Century Home*, 550 P.2d at 1190).

The Oregon courts consider it inequitable to apply issue preclusion when the evidence presented by the adverse party "severely undermine[s]" the integrity of the prior judgment or when the evidence establishes that

---

nature which properly qualifies for preclusive effect. *See Barackman v. Anderson*, 167 P.3d 994, 1000 (Or. App. 2007) (appeal after remand from *Barackman I*). Regardless, nothing in the record suggests that Tolley lacked the incentive to defend against Fitzhugh's fraud allegations in the state court action.

10

the court in the second action likely would reach a different result. *State v. Manwiller*, 435 P.3d 770, 775–76 (Or. App. 2018); *accord, Century Home*, 550 P.2d at 1190. Circumstances that might justify a determination of unfairness include: (1) where it is apparent a jury verdict was the result of juror compromise; (2) an obvious and fatal error in the prior determination; (3) the discovery of new evidence not available to the adverse party in the prior litigation, where it is apparent that the new evidence would have a significant impact on the outcome; and (4) the existence of multiple decisions addressing the same issue but with inconsistent results. *Century Home*, 550 P.2d at 1190-91.

## C. Tolley's arguments on appeal.

As we indicated above, formal judicial proceedings in Oregon courts presumptively provide the parties with a full and fair opportunity to litigate. *Graham*, 2015 WL 10322087, at *8. The state court held a two-day jury trial in which the parties were represented by counsel. The action that resulted in the fraud judgment against Tolley was just such a formal judicial proceeding. Thus, the presumption applies. A litigant like Tolley challenging this presumption must establish the same indicia of unfairness as she would need to establish in order to successfully challenge the ultimate fairness of applying issue preclusion. *Graham*, 2015 WL 10322087, at *9. Thus, for purposes of this appeal, the full and fair opportunity question and the ultimate fairness question reduce into a single inquiry.

With this methodology in mind, we turn our attention to Tolley's allegations of unfairness.

1. **The summary judgment record does not support Tolley's contentions regarding the full and fair opportunity and ultimate fairness issues.**

    a. **General allegations of error by the state court.**

In her appeal, Tolley relies on the same allegations contained in her declaration opposing summary judgment. Many of Tolley's statements in her declaration are confusing and relate to matters not relevant to whether Tolley committed fraud. And review of her fairness arguments is further hamstrung by her failure to provide transcripts from the state court proceeding. This denied the bankruptcy court the ability to place her arguments within the context of the jury trial.

For instance, Tolley insists that the ranch did not own any of the mules that Fitzhugh claimed as collateral. She also maintains that the ranch was owned by her parents and that providing labor as a ranch hand was her only role in the ranch. But the ranch is a separate defendant and its liability for fraud was not at issue in the nondischargeability action. As with most of her allegations, Tolley never tied any of the statements concerning the ranch to any circumstances that would either negate **her** liability for fraud or demonstrate the unfairness of applying issue preclusion to the state court fraud judgment.

Tolley contends that the state court denied her the opportunity to present all of her evidence. She similarly maintains that it denied her the chance to call several witnesses. Tolley also stated that her attorney failed to present all of her evidence. Yet, Tolley provides only her summary of events within the trial and her opinion as to the significance of the excluded evidence. Because she did not provide a transcript of the trial, there is no evidence of what evidence was excluded or why it was excluded.

In opposition to Fitzhugh's motion for summary judgment, Tolley presented the bankruptcy court with a generalized narrative of her grievances against her own counsel, the trial court, and even opposing counsel. Her declaration largely consisted of what she believed she could prove if the matter went to an evidentiary hearing. Additionally, most of her allegations establish only that she disagrees with the decisions of the state court and her own counsel. Tolley's disagreement with the state court's rulings and the jury's verdict amount to nothing more than claims of error which she could have raised in a direct appeal from the fraud judgment. But they do not raise a genuine dispute as to the fairness of her trial. In short, her declaration failed to provide specific evidence to create a genuine issue as to the fairness of her state court trial.

### b. Tolley's allegations concerning her trial counsel.

As the bankruptcy court observed, the vast majority of Tolley's specific, concrete complaints about the state court litigation are directly

linked to things she believes her own counsel should or should not have done that allegedly prejudiced her interests. She charges her state court counsel with misconduct and omissions in her representation during the state court action.

The bankruptcy court correctly noted that civil litigants generally have no constitutional right to the effective assistance of counsel. *Johnson v. County of San Bernardino*, ___ F. App'x ___, Case No. 20-55186, 2021 WL 4810646, at *2 (9th Cir. Oct. 15, 2021) (citing *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985) (per curiam)). Furthermore, Tolley did not cite any relevant authority supporting her position that a judgment otherwise qualifying for the application of issue preclusion should be denied preclusive effect when the adverse party had ineffective assistance of counsel. Nor did we find any Oregon authority on point.[7] But if accepted, Tolley's arguments would impose a novel constraint on preclusion doctrine that inappropriately would force prevailing parties to bear the expense and aggravation of relitigating matters already resolved in their favor based on the incompetence of the adverse party's counsel.

---

[7] As the bankruptcy court discussed, several decisions from other jurisdictions have rejected the notion that the complete absence of counsel bars the application of issue preclusion. *See DeGuelle v. Camilli*, 724 F.3d 933, 938 (7th Cir. 2013) (listing cases and describing as "absurd" the idea that pro se litigants are insulated from the principles of res judicata, including issue preclusion). The bankruptcy court here reasoned that if the complete absence of counsel does not negate the issue preclusive effect of a prior judgment, neither should the assistance of incompetent counsel.

Contrary to Tolley's argument, the United States Supreme Court has recognized that in civil matters "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993). The Oregon Supreme Court has articulated and followed a similar rule, holding that litigants are responsible for the consequences arising from the negligence of their own attorneys. *Ebel v. Boly*, 481 P.2d 620, 622 (Or. 1971). The *Ebel* court further remarked that while this rule might lead to harsh results under certain circumstances, "it would be almost impossible to conduct the courts' business on any other basis." *Id.* at 623.

Tolley was given the opportunity to litigate her case with counsel she selected. And she proceeded to participate in a two-day trial with the assistance of her counsel. Accordingly, we reject Tolley's challenge that she was denied a full and fair opportunity to litigate her defenses to the fraud claim in the state court and that the resulting adverse jury verdict was ultimately unfair based on inadequate assistance from her own counsel. Accepting as true the statements in her declaration, she may have claims against her counsel, but she did not raise any genuine dispute as to the fairness of her trial for purposes of issue preclusion.[8]

---

[8] To be clear, we offer no opinion as to whether any claims exist against Tolley's former counsel.

### c. Allegations concerning opposing counsel and the court.

Aside from the incompetence of her counsel, Tolley offered nothing in the way of concrete specific facts tending to "severely undermine" the integrity of the state court judgment or to establish that the bankruptcy court likely would have reached a different result if it had permitted Tolley to relitigate the issue of her fraud. *See Century Home*, 550 P.2d at 1190. She talked in conclusory terms about the **potential** for juror and judge bias in light of Fitzhugh's general standing in the community and his counsel's alleged "personal relationship" with the judge. She similarly spoke vaguely about ex parte contacts between the judge and Fitzhugh's counsel — without identifying the nature and subject matter of those alleged contacts or establishing their connection (if any) to the resolution of the party's litigation. Nor did she offer any coherent explanation indicating how she might have learned of any alleged ex parte contacts.

Similarly, Tolley refers to "corruption" in the county where the trial occurred. But she again offers no indication of what this corruption consisted of, her personal knowledge of its existence, or its connection (if any) to the state court litigation. Moreover, she refers by name to a friendly witness who supposedly has personal knowledge of the corruption, but she failed to provide any declaration testimony from this friendly witness to support her corruption claim.

Again, Tolley's speculation and unsupported conclusions in her declaration did not raise a genuine dispute as to the fairness of her trial and the resulting fraud judgment.

### d. The Collateral List.

Finally, Tolley places significant emphasis on a document referred to as the "Collateral List" which was found to identify the collateral securing Fitzhugh's loan. Tolley contends that without the Collateral List, Fitzhugh could not have proven that Gorbett pledged the livestock and equipment listed as collateral for his loan from Fitzhugh. According to Tolley, she learned for the first time after the trial that this document was forged. She discovered this, she says, by studying Fitzhugh's counsel's billing records. She argues that the bankruptcy court erred by granting summary judgment in light of this newly discovered evidence.

Oregon law indicates that subsequently discovered evidence may under appropriate circumstances preclude application of issue preclusion. *Century Home*, 550 P.2d at 1191. However, Tolley has failed to provide specific facts regarding her so-called newly discovered evidence. She failed to explain to the bankruptcy court how opposing counsel's billing records demonstrated that Fitzhugh forged the Collateral List. Nor did she submit these billing records with her summary judgment response to establish the existence of this newly discovered evidence. Moreover, it is impossible to tell from Tolley's statements whether she actually considered Gorbett's signature on the Collateral List to be forged or whether she merely

17

questioned the authenticity of the version admitted into evidence during the state court trial because it contained two lines of handwritten text. Tolley insisted that this text was not on the "original version" she gave to her counsel before trial. But Tolley did not include that document either. She stated that her counsel misplaced the original version of the Collateral List.

Tolley also admits that she unsuccessfully attempted to prevent the allegedly altered version of the Collateral List from being admitted into evidence during the state court trial. But, as noted above, she has not provided a transcript of what happened at trial. In her declaration, Tolley never even describes the nature of the evidentiary objection she made or the court's basis for overruling the evidentiary objection. The failure to provide admissible evidence as to what happened at trial precludes any meaningful challenge to the fairness of that judicial proceeding.

**2. Tolley did not present sufficient evidence to raise a genuine issue of material fact regarding fairness.**

Tolley argues that trial was necessary on the ultimate fairness issue. This argument is foreclosed by entry of summary judgment which is based on the absence of any genuine dispute of material fact. As such, Fitzhugh is entitled to judgment as a matter of law.

Tolley claims that the bankruptcy court improperly weighed her evidence in granting Fitzhugh summary judgment. It did not. Instead, the court examined Tolley's evidence, largely comprised of her declaration, to

determine whether she presented particular facts establishing a genuine dispute as to the ultimate fairness of applying issue preclusion to the state court fraud judgment. At bottom, Tolley presented a patchwork of her own conclusory allegations and speculation challenging the merits of the underlying state court judgment. But her disagreement with the state court's trial rulings and the resulting judgment does not come close to undermining the integrity of that judgment — as would be necessary to establish a genuine issue regarding the integrity or fairness of that judicial proceeding. Nor do Tolley's allegations come close to establishing any of the specific grounds the Oregon Supreme Court has recognized as rendering it inequitable to give issue preclusive effect to a prior judgment.

Having independently reviewed the entire record and having given no deference to the bankruptcy court's decision, we nonetheless have reached the same conclusion as the bankruptcy court: Tolley failed to present sufficient evidence that would enable a reasonable trier of fact to find that she had established any indicia of unfairness. Thus, there was no genuine issue of material fact that needed to be tried pertaining to the ultimate fairness issue. *See Celotex*, 477 U.S. at 322-23; *Far Out Prods., Inc.*, 247 F.3d at 992.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's summary judgment against Tolley on Fitzhugh's § 523(a)(2)(A) claim for relief.